88 453
101 378

88 453
129 462

88 453
133 366
133 408

88 453
135 341

88 453
137 631

# Western Railway Co. *v.* Lazarus.

### *Action against Railroad Company for Killing Cow.*

1. *Sufficiency of complaint in averment of negligence.*—In an action against a railroad company, to recover damages for killing a cow, an averment in the complaint that the engine was "so negligently operated by defendant's agents that plaintiff's cow was killed," and "that said cow was killed on account of said negligence," is sufficiently certain and definite.

2. *Variance in description of animal.*—The animal killed being described in the complaint as a cow, and shown by the evidence to be partly of Jersey stock, though not full-blooded, or thorough-bred, the testimony of a witness can not be excluded from the jury, because he speaks of her as a Jersey cow.

3. *Proof of value; opinion of witness.*—A witness may give his opinion of the value of the animal killed, a graded cow part Jersey, although he states that his opinion is based "on the Jersey craze which existed about that time."

4. *Same.*—The animal killed being only partly of Jersey blood, a *graded* cow, a witness can not be allowed to testify as to the value of a thorough-bred Jersey at the time and place of the accident.

5. *Obstructions on railroad track; duty of engineer to look out for; charge requiring explanation.*—It is the duty of an engineer, in charge of a moving train of cars, to keep a steady look-out ahead for obstructions on the track, so far as consistent with the discharge of other duties devolved upon him; and a charge which instructs the jury that it is his duty "to keep a steady look-out," without limitation as to other conflicting duties, is not erroneous, though it may, without explanation, tend to mislead the jury.

6. *Animals on or near railroad track; duty of engineer to stop or check train.*—When an animal is perceived near to the track of a railroad, the diligence required of the engineer of a moving train is not the same as if it were on the track (Code, § 1144); and he is not required to stop or check the train, unless the circumstances indicate that it is likely to move on the track, or probably be injured if it remains stationary.

7. *Waiver of objection to jurisdiction of justice of the peace.*—If an action to recover damages for killing a cow, of value more than $50, is brought against a railroad company in a justice's court, objection to his want of jurisdiction must be made before him, and can not be raised for the first time in the appellate court.

8. *General charge on evidence.*—When there is any evidence, however slight or weak, tending to show negligence on the part of the defendant in the matter complained of, a general charge in his favor is properly refused.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by B. D. Lazarus, against the appellant corporation, to recover damages for killing a cow; and was commenced in the court of a justice of the peace, on

the 20th March, 1886. On appeal to the Circuit Court, the plaintiff filed a complaint, claiming $100, "the value of a cow of plaintiff, negligently killed by engine of defendant, on or about January 26, 1886, on defendant's railroad track between Opelika and Auburn, Lee county, Alabama, and about three miles east of Auburn." The court sustained a demurrer to this complaint, but granted plaintiff leave to amend; and it was thereupon amended, by alleging "that said engine was being operated by defendant, and, while being so operated, was operated and run so negligently by defendant's agents that plaintiff's cow was killed on account of said negligence." The defendant demurred to the amended complaint, but the demurrer was overruled; and issue was joined on the plea of not guilty. On the trial, a bill of exceptions was reserved, in which the facts are thus stated:

"Plaintiff proved that the animal sued for was a Jersey cow, about 19 months old, and was killed by defendant's train of cars; and that the tracks of the animal were seen on the railroad, for about 175 yards, as if running or jumping ahead of the engine. The evidence showed without contradiction, that the railroad track at the place where the animal was killed, back in the direction from which the train came, was perfectly straight for at least a mile; and the evidence showed that the animal was worth from $20 to $100. One Clayton, a witness for plaintiff, testified that, basing his opinion on the Jersey craze which existed about the time the animal was killed, he thought it was worth $100;" and the court admitted this evidence, against the objection and exception of the defendant. "Clayton and Lazarus each swore that the cow was a Jersey, and that they were familiar with Jersey cattle. The defendant introduced one Ross as a witness, who, having shown himself an expert on Jersey cattle, stated that no Jerseys were thorough-bred unless duly registered in the American Herd Book; that none others were Jerseys, but only graded cows; that a grade Jersey should properly be so called, but they were commonly called Jerseys. There was no evidence showing that plaintiff's said cow was ever registered, or entitled to be registered. Plaintiff asked said Ross, what thorough-bred Jerseys were worth; and he answered, several hundred dollars, and sometimes thousands." The court admitted this question and answer, against the objection and exception of the defendant. "After the evidence of said expert (Ross), the defendant moved to

exclude the evidence which stated that this cow was a Jersey;" and duly excepted to the overruling of this motion.

The defendant introduced one Ferguson as a witness, "a colored fireman, who was on the engine that killed the cow, and who testified, that the train was a passenger train, consisting of five or six cars, and was running 35 or 40 miles an hour, on a down grade; that the animal, when he first saw it, was feeding on the grass at the foot of the embankment on which the road-bed was situated, and continued thus until the engine was within 50 or 75 yards of it, when it started up the embankment towards the track; that the engineer then blew the cattle-alarm, put on the brakes, and did everything known to skillful engineers to stop the train, but the engine overtook the animal, struck and killed it, before the train could be stopped; and that from the time the animal started towards the track, up to the time when the engine struck and killed it, it was impossible to stop the train, or to prevent the injury. The engineer of the train, a white man, is still in the employment of the defendant. Two other witnesses, conductors of many years standing, and well acquainted with the management of trains, each testified, that said train, running at the speed it was on that occasion, could not have been stopped in less than 300 or 350 yards."

"This being substantially all the evidence, the court charged the jury, among other things, that the law required the engineer to keep a steady look-out ahead for obstructions on the track; to which charge the defendant excepted, and requested the court, in writing, to charge the jury, that they must find for the defendant, if they believed the evidence. The court refused this charge, and the defendant excepted."

The defendant also reserved exceptions to the following charges, which were given by the court at the instance of the plaintiff: (1.) "A watchful look-out must be steadily maintained, for the discovery of obstructions on the track; and it is no excuse for the railroad that the cow was not seen, if by prudent watchfulness she could have been discovered. Failure to maintain a steady look-out is itself culpable negligence." (2.) "It is the duty of the railroad agents running the train to keep a watchful look-out for the discovery of stock on the track, or dangerously near to it; and it is no excuse for the railroad that the cow was not seen in time to prevent killing her, if by prudent watchfulness she could have been discovered; and if the railroad employees failed to see the cow on the track, or in dangerous proximity to it, by

failing to keep a prudent look-out in time to avoid killing her, the plaintiff is entitled to a verdict." (3.) "It is the duty of the engineer to use all proper means to prevent injury to the cow, if he saw her, or by the use of due diligence ought to have seen her, in dangerous proximity to the track, and under circumstances indicating danger of her getting on the track; and if he saw her, or could have seen her by due diligence, on or dangerously near to the track, far enough ahead to have stopped or slacked the train, he should have done so; and failing so to do, and by such failure killed her, the jury should find for the plaintiff."

The several rulings above stated are assigned as error.

HARRISON & LIGON, for appellant.

SAMFORD & CHILTON, contra.

SOMERVILLE, J.—1. The averment in the complaint that the engine was "so negligently operated by defendant's agents that plaintiff's cow was killed," coupled with the further allegation that "said cow was killed on account of said negligence," is, in our judgment, sufficiently explicit to show that the damage done the animal resulted from the alleged negligence of such agents, and therefore of the defendant itself. Any averment is sufficient which shows that the negligence of the defendant either caused, or reasonably contributed to the injury complained of, or that the injury resulted from such negligence.— Western Railway of Ala. v. Sistrunk, 85 Ala. 352; Code, 1886, § 1147. The demurrer to the complaint was properly overruled.

2. It could work no prejudice to the defendant that one of the plaintiff's witnesses described the stock killed as a "Jersey cow," although it was shown by the evidence to be a "graded" and not a "thorough-bred" Jersey. The term used was generic, and indicated a mere popular nomenclature. No question of variance was involved, the animal being described in the complaint only as a cow, and not as a Jersey cow. Even a false or erroneous description in such cases can work no injury.

3. The opinion of the witness Clayton, as to the value of the animal, was certainly competent evidence. The fact that his estimate of value was based on what the witness designated as "a Jersey craze," which existed in the country about the time the animal was killed, might affect the weight

of his opinion, but not its admissibility. There are times when the market value of almost every commodity of commerce is affected by a distracted or speculative condition of the public mind, although the rise or fall of price may be produced by no solid economic reasons.

4. We have carefully considered, and are unable to perceive what relevancy to any issue in the case the fact proved by the witness Ross had. He was permitted to prove, at the instance of the plaintiff, the market value of *thorough-bred Jerseys*. The cow injured was not of this class, being only a graded Jersey. The value of the one was not admissible to prove the value of the other. The elements of fact which govern price and value are so complex, and especially is the prevailing supply and demand of different articles so variable, that the value of the one may have but little influence on that of the other. The market price of mules, for example, would not be competent evidence of the price of a horse; nor that of cotton to prove the value of manufactured cotton fabrics; nor of steel or iron to show the value of a hoe or a plow. The objection to the testimony of Ross should have been sustained, and for the error of admitting it the judgment must be reversed.

5. The court charged the jury, that "the law required the engineer to keep a *steady look-out* ahead for obstructions on the track;" and to this charge exception was taken. We have said, in discussing this subject, that "a watchful look-out must be steadily maintained, for the discovery of obstructions on the track," and that "a failure to maintain a steady look-out is itself culpable negligence."—*M. & G. R. R. Co. v. Caldwell*, 83 Ala. 196. These expressions are substantially synonymous in meaning with that used by the court; and if their tendency was to mislead the jury, this should have been corrected by requesting a counter charge, making prominent the fact that other duties, besides that of keeping a look-out for obstructions, devolve on the engineer, which may often prevent the constancy of his uninterrupted observation, and that a proper attention to these duties would not impute negligence. A "steady look-out" must not be construed to be an absolute, but a relative duty. The tendency of the first charge may have been misleading, but the charge itself was not erroneous.

6. To say that the presence of animals in dangerous proximity to a railroad track would call for the same exercise of diligence as if they were actually on the track, would be

an incorrect statement of the law. The statute provides, that the engineer must, "on perceiving any *obstruction on the track,* use all the means within his power, known to skillful engineers, such as applying the brakes, and reversing engine, in order to *stop the train.*"—Code, 1886, § 1144.

The railroad company is made liable for any injury to persons, or stock, or other property, resulting from a failure to comply with this requirement, or from *any other negligence* on the part of the company, or its agents.—Code, § 1147. We may suppose a case, where animals are in dangerous proximity to the track when discovered, but the reasonable indications are that they are about to move out of the range of danger. In such event, there would be no duty to stop the train. Such requirement would be both unnecessary and unreasonable. The duty to check the train would exist, only where the engineer either discovered, or, by the use of due diligence, ought to have discovered the animal, in dangerous proximity to the track, and under circumstances indicating either that it would be likely to move on the track, or else probably be injured if it remained stationary.—*Western Railway of Ala. v. Sistrunk,* 84 Ala. 352. The second and third charges should not have been given.

7. It is insisted that the justice of the peace, before whom the action originated, had no jurisdiction of the case, on the ground that the value of the animal killed was over fifty dollars.—*Brown v. Ala. Gr. So. R. R. Co.,* 87 Ala. 370; 6 So. Rep. 295. It is sufficient to say, that this question can not be raised for the first time in this court. It should have been raised before the justice's court, by motion to dismiss for the want of jurisdiction, or by plea in abatement.—*Burns v. Henry,* 67 Ala. 209; *Glaze v. Blake,* 56 Ala. 379. The statute makes such appeals triable *de novo* in the Circuit Court, and that court had jurisdiction of the subject-matter, whatever the amount in controversy. A failure to object to the procedure in the justice's court, on the ground of jurisdiction, followed by an appeal to the Circuit Court, has been considered under our decisions as a waiver of the question in the latter court.

8. We can not say that the court erred in refusing to give the general affirmative charge requested by the defendant, as there was some evidence tending to show negligence on the part of the engineer. That it was slight, or weak, is a

[Gaston v. The State.]

fact addressed to the consideration of the jury, not of the court.

Reversed and remanded.