## Yazoo & Mississippi Valley Railroad Co. *v.* T. L. Whittington.

1. RAILROADS. *Live stock near track. Duty of engineer, etc.*

It is not the duty of the engineer of a railroad train, upon seeing live stock near the track, to stop the train or check its speed, unless there is an apparent necessity for so doing, and, ordinarily, the discovery of an animal near the track does not create such necessity.

2. SAME.

An engineer is not bound to anticipate that a horse drinking at a pond would run up a bank ten or twelve feet high, in front of a moving train.

FROM the circuit court of Jefferson county.

HON. W. P. CASSEDY, Judge.

The facts are stated in the opinion of the court.

*Mayes & Harris*, for appellant.

*C. S. Coffey*, for the appellee.

The reporter does not find a brief on either side on file.

Stockdale, J., delivered the opinion of the court.

T. L. Whittington recovered judgment against appellant (defendant below) at the August term, A.D. 1895, for sixty dollars and costs of suit—price of a horse killed by appellant's train—and this appeal was prayed and allowed.

On the trial, S. J. Jones, witness for plaintiff, testified that he saw the horse killed. The horse was drinking from a pond about twelve feet from the railroad track when witness first saw him. He heard the train, threw up his head, and jumped upon the track, turned down it, ran in front of the engine about thirty yards, was knocked off and killed. The train went on about sixty yards and stopped or checked up. The witnesses practically agree that the train was about coming out, or had just come out, of a cut about forty or fifty yards north of the pond where the horse was drinking and the place where he ran up on the track, the embankment being ten or twelve feet high there, and that the distance from where the horse jumped upon the track to where he was killed was estimated to be twenty to thirty yards.

Several witnesses testified that the engineer might have seen the horse where he was drinking at the pond, three hundred to four hundred feet away, as he came down the road. The greatest estimated distance (except one witness) between where the engine was when the horse got upon the track, and where he was killed, was eighty yards. Some witnesses say less—forty-five or fifty yards. The engineer testified that the grade was slightly descending, and that he could not have stopped his train under three hundred to three hundred and fifty feet; that as soon as the horse got upon the track he put on brakes with full force, and cut off steam to lower the speed of the train, and blew the whistle. No effort was made, so far as the record shows, to controvert that testimony. Indeed, it seems not to be at all claimed that the train could have been stopped after the horse got upon the track before it struck him. And it may be conceded that the train could have been stopped between the

point where the engineer might have observed the horse drinking at the pond and the point where the horse was killed, and yet not make the railroad company liable, for the engineer was not required to stop his train before the horse got upon the track. And as that testimony was before the jury, the verdict may have been, and probably was, based upon it; whereas, appellant was not liable unless its servants failed to use proper effort after the horse mounted the track. "It is not the duty of the engineer to stop his train until there is an apparent necessity for it. Ordinarily, the discovery of animals or persons near the road does not require the stopping of the train." *Railroad Co.* v. *Brumfield*, 64 Miss., 637; *Railroad Co.* v. *Thornton*, 65 Miss., 256. The engineer could not be held to anticipate that a horse drinking at a pond would run up a bank ten or twelve feet high right in front of a moving train.

It is not required that a train be stopped, nor its speed checked, because animals are discovered near the track; "unless appearances reasonably indicate danger of their going upon the track, neither the stoppage nor an effort to stop the train is required." Rapid movements and regular connections are among the chief advantages of transportation by railroads—this is a duty they owe to the public—and if a train must stop or check up whenever an animal is near the track, such duties could not be properly discharged. *Railroad Co.* v. *Bourgeois*, 66 Miss., 3.

So far as the evidence in this case discloses, appellant's servants used all reasonable efforts, and did all they could do, to avoid the accident and the killing of the horse after he started to get upon the track. True, Mr. Jones testified that, so far as he could see, no effort was made to check the train, but the same witness also testified that the train stopped, or checked up so that the train master got off, in about sixty yards after the horse was struck, therefore the engineer must have used his appliances to check the train about the time and place he and the fireman testified to.

We are of opinion that, upon the testimony as detailed on

the trial, as shown in this record, the peremptory instruction should have been given, and therefore the motion for a new trial ought to have been sustained.

*The judgment of the court below is reversed, and new trial granted, and the cause remanded.*