(March 10, 1909.)

## H. E. WALLACE, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[100 Pac. 904.]

RAILROADS—DAMAGE FOR KILLING COLT—FENCING RIGHT OF WAY—
   PRIVATE CROSSINGS — GATES — PROPER HEADLIGHT — NEGLIGENCE —
   EVIDENCE—RULE OF EVIDENCE.

   1. *Held,* that the evidence fails to establish any negligence whatever on the part of the railroad company in maintaining a proper gate in its right of way fence, or in keeping such gate closed.

   2. It is the duty of a railroad company to equip its railroad locomotives with proper headlights of such power that the engineer

can see an animal a sufficient distance ahead of the locomotive to enable him to stop the train before it reaches such animal.

3. *Held,* under the facts of this case that as the animal was first seen going toward the track about one hundred and fifty feet in front of the train, and within the distance the headlight cast a light, and too late to stop the train and prevent the accident, that no negligence is shown on behalf of the railroad company.

4. When an animal is on the railroad right of way near the track, the train need not be stopped nor its speed checked unless the circumstances indicate that it is likely to move upon the track or probably be injured if it remains stationary.

5. The admission of certain evidence held not error.

6. Where a statute affecting the remedy will in a particular case operate to change or defeat the right, it will be held not to apply in such case.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Canyon County.   Hon. Ed. L. Bryan, Judge.

Action to recover damages for the killing of a colt.   Judgment for the plaintiff.   *Reversed.*

P. L. Williams, and D. Worth Clark, for Appellant.

Where defendant's engineer testifies that he used all possible diligence, and is not contradicted or impeached, a verdict for the plaintiff will not stand.   (*C. B. & Q. Co. v. Roberts,* 35 Colo. 498, 84 Pac. 68; *Kansas City etc. Ry. Co. v. King,* 66 Ark. 439, 51 S. W. 319; *Ala. & V. Ry. v. Stacy* (Miss.), 35 So. 137; *Southern Ry. Co. v. Hoge,* 141 Ala. 351, 37 So. 439; *Crary v. Chicago M. & St. P.,* 18 S. D. 238, 100 N. W. 18.)

The mere fact that the mare was near the track would not impose upon an engineer the absolute duty of stopping his train.   (*Ry. Co. v. Lazarus,* 88 Ala. 453, 8 So. 877; *Peoria etc. Ry. Co. v. Champ,* 75 Ill. 577; *St. Louis etc. Ry. Co. v. Russell,* 39 Ill. App. 443; *Louisville etc. Ry. Co. v. Bowen* (Ky.), 39 S. W. 31.)

"A party can have no vested right in a mere rule of evidence, and such rules, affecting as they do only the remedy, the legislature may modify them."   (*Sanders v. Greenstreet,*

23 Kan. 425; 6 Am. & Eng. Ency. of Law, 2d ed., 950; *John v. Bridgeman,* 27 Ohio St. 22; *Rich v. Flanders,* 39 N. H. 304.)

Griffiths & Griffiths, for Respondent.

"It is negligence for a railroad to operate a locomotive and train of cars at night at so great a rate of speed that it is impossible to stop the train within the distance that the locomotive headlight illuminates the track." (3 Elliott on Railroads, sec. 1205, pp. 462, 463; *Western R. etc. Co. v. Stone,* 145 Ala. 663, 39 So. 723; *Anniston Elec. etc. Co. v. Hewitt,* 139 Ala. 442, 101 Am. St. 42, 36 So. 39; *Jonesboro etc. Co. v. Guest,* 81 Ark. 267, 99 S. W. 71.)

The care exercised after the discovery of the animals is immaterial, if the negligence of the defendant prevented the discovery of the animals, until it became impossible to prevent their injury. (3 Elliott on Railroads, sec. 1205, p. 463; *Alabama etc. R. Co. v. Jones,* 71 Ala. 487.)

A legislative act which retrospectively changes a remedy, by express provision, in a manner so as to deprive a party in any pending action of any right, either of action or defense, is void as to that action. But unless it is expressly and unmistakably made to apply to pending actions, it will not be so construed. (*Green v. Biddle,* 21 U. S. 1, 5 L. ed. 547; *Edwards v. Kearzey,* 96 U. S. 595, 24 L. ed. 793; *Willard v. Harvey,* 24 N. H. 344; *People ex rel. Thorne v. San Francisco,* 4 Cal. 127; *Welsh v. Cross,* 146 Cal. 621, at p. 624, 106 Am. St. 63, 81 Pac. 229; *Dash v. Van Kleeck,* 7 Johns. (N. Y.) 477, 5 Am. Dec. 291.)

SULLIVAN, C. J.—This action was commenced in the probate court for the negligent killing of a colt and resulted there in a judgment for the plaintiff for $100 damages. The defendant appealed from that judgment to the district court and the case was tried there anew before a jury, and resulted in a verdict and judgment for the plaintiff for $130 damages.

It appears from the record that the colt was pasturing at the time it was killed upon the inclosed farm of one Lee,

and that the defendant company maintains a right of way fence across said Lee's land, and a gate therein for the use and benefit of the land owner, at a private crossing, and it is alleged that the defendant removed the fastening from said gate and permitted the gate to remain without a suitable fastening, and said colt passed through said gate upon defendant's right of way and was killed by one of its trains. It is also alleged that within three months after the date of said killing plaintiff made a claim in writing upon the defendant for $150 for the killing of said colt, and that said claim was signed by the owner of said animal, and that the defendant failed and refused to pay the same or any part thereof.

All of the material allegations of the complaint that would entitle the plaintiff to recover are put in issue by the answer, and the answer avers that in the killing of said colt the defendant was without fault or negligence, and avers that the killing of said animal was due entirely to the carelessness and negligence of the plaintiff.

A motion for a new trial was made and overruled, and this appeal is from the judgment and the order denying a new trial.

One question discussed by counsel for appellant is the sufficiency of the evidence to show that the agents or servants of the railroad company were negligent in the maintenance of the gate through which said colt entered upon the defendant's right of way.

It appears from the evidence that the railroad right of way where the animal was killed is inclosed by a fence; that a private road for the accommodation and use of the land owner, through whose land the railroad ran, was made by the railroad company, and a gate put in the fence on each side of the track. It also appears that said gates were properly made, and when properly shut would prevent animals from getting on the railway right of way; that on the evening of the accident the owner of the colt, with the owner of the land and the latter's small boy and another person or two, passed through said gates, and the boy stopped be-

hind to close the gate. The evidence shows that he closed the gate, and it does not appear that anyone passed through said gate from that time until after the colt had passed through it and was killed by a passing train. It is admitted that if said gate had been properly closed, said animal could not have gotten through it.

It also appears that a short time before the accident, the railway company fence gang had put in some new posts at the point where said gate is situated, and prior to that time the railroad company had furnished a chain and lock and key for said gate, and also for the gate on the opposite side of the track; that when said fence gang repaired said fence, they left the old post, around which was the chain, lying on the ground near where the new post was put in, and did not put it around the new post and lock the gate. It also appears that the private land owner left said gate unlocked, especially during the seasons when he was going through it quite often, and it further appears that such land owner took the lock from the gate, through which the colt passed, to the gate on the opposite side of the track and used it there. It is conceded that the fence gang put said new post in properly and put thereon proper cleats between which the ends of the boards composing the gate could be put. From all of the testimony upon this point, it clearly appears that it is insufficient to establish any negligence whatever on the part of the railroad company so far as the maintenance of and keeping this gate closed is concerned, as it shows the railroad company had placed a good and sufficient gate there with proper fastenings, and that if it had been properly closed, the animal would not have gotten through. If the private land owner had not taken the lock away, but had used it for the purposes for which the company had left it there,— that is, for locking the gate,—this accident would not have occurred. Had the private land owner locked the gate when he went through on the evening the colt was killed, the accident would not have occurred.

Judge Elliott in his work on Railroads, 2d ed., vol. 3, sec. 1200, clearly states the rules of law governing the question

of the maintenance of and the closing of such gates. He states as follows:

"At private crossings, as we have before seen, railway companies are often bound to fence their tracks. But at such places a permanent and immovable fence cannot be maintained, for such a fence would prevent the crossing from being used. At such points openings are usually left in the fence and gates or bars erected through which the adjoining owners may pass, and at such places the railway company is bound to erect gates, bars or other appliances which will prevent the entry of animals and yet enable adjoining owners to pass over the right of way. The company must also exercise due care to see that gates and bars which it erects are kept in proper repair. As a general rule, it is the duty of the company to exercise care to keep gates and bars erected in fences along its right of way closed, and to see that such gates are provided with proper fastenings for keeping them closed. Where such gates are left open by the agents, servants or customers of the railway company, the railway company will generally be liable for injuries to animals which come upon the track through such open gates. And the company will generally be liable where the gates are left open by third persons or strangers if the company knows that they are open or they have been open for such a length of time as to charge the company with notice, but not otherwise. The company is entitled to a reasonable time in which to learn that gates and bars are open or out of repair, and it will not be liable until it has had reasonable opportunity to close the gate or bars or make repairs. Where gates are left open by the adjoining owner for whose benefit they were erected, or by his servants, the company is not liable to him."

We think that a correct statement of the law, and that where such gates are left open or not properly closed by the adjoining land owner for whose benefit they were erected, the company is not liable for damages that result therefrom.

Something has been said in regard to the duty of the railroad company to see that said gate was locked at all times.

From the evidence it appears that the company did furnish a chain and lock and furnish the private land owner with one key to the lock and that the foreman or boss of the section kept the other key, but there is no requirement of the law that compels the railroad company to keep a farm crossing gate locked.    The railroad company is not required to keep a man stationed at such gate all the time to lock it whenever the private land owner goes through.    The company provided the chain and the lock, the land owner unlocked the gate and fastened the chain around the post, left the gate unlocked and took the lock away from that gate.    The private land owner was the custodian of one of the keys of said gate, had the right to unlock it and go through, and from the evidence it appears that the gate was closed and that about sundown of the evening upon which the animal was killed, and perhaps not more than an hour before it was killed, the plaintiff and the private land owner and his son passed through that gate, and so far as appears from the record, they were the last people who passed through it.    From all of the evidence, it is clear that if the boy properly closed the gate, some one thereafter opened it, and the railroad company is not liable, for the reason that the private land owner, who was the agent of the owner of the colt, had removed the lock and neglected to lock the gate after having passed through it. If the boy properly closed it, and some other person passed through prior to the time the colt was killed, he was permitted to do so because of the failure of the private land owner to lock the gate, and the private land owner's negligence cannot be charged to the appellant if that was negligence on his part.

The next question for consideration is: Does the evidence show negligence on the part of the agents or servants of the railroad company in the operation of the train which killed the colt? It appears from the evidence that the railroad track at the point where the colt was killed was raised a little above the surface of the ground and practically straight for a long distance,—in fact, all the way between Caldwell and Nampa. The engineer having charge of the train that killed the colt testified as follows:

"The circumstances of the killing of that animal was, I was coming west on extra engine 606, about 7 o'clock P. M., on the 21st, the day spoken of, and at this place mentioned just before we got to mile post 464, I saw two colts come up from the side of the track and run upon the track about a hundred and fifty feet ahead of the engine. I sounded the whistle and applied the brakes immediately and stopped, but before I stopped, I struck the colts and knocked one of them off the track and crippled it, and killed the other. I had been keeping a lookout ever since leaving Nampa. I was on the right-hand side of the cab. These colts came on the track on my side. I discovered them as soon as they came on the track. The air-brakes on my train was in good condition. There was nothing I left undone that I could have done to have avoided the killing of these animals. It was dark at that time. I could not see the animals before they came into the focus of my headlight. The first I saw of them was when they came up from the side of the track and came into the light of my headlight."

It appears from that evidence that the colt was killed about 7 o'clock on the 21st of November, 1904, which was after dark, and that the colt came on the track immediately ahead of the train and in such a way as to make it impossible to stop the train and avoid the accident. It appears from the evidence that it was a heavy freight train running at the rate of about twenty-five miles an hour, and that it would require six or seven hundred feet in which to stop it; that the air-brakes on the train were in good condition; that there was nothing left undone that could have been done by the engineer to avoid the killing of the animal. This evidence is not contradicted, but it is contended that the evidence shows that said freight train had only an ordinary oil headlight, which would enable the engineer to see an animal in advance of the train along the track possibly not over 200 feet; that it was negligence on the part of the railroad company to use such a headlight; that it was carelessness and negligence on the part of the railroad company to use a headlight that would not enable the engineer to discover an animal a sufficient distance ahead

of the train to stop it before it reached the animal.   The engineer testified as follows: "I had an ordinary headlight. Possibly you could see an animal 200 feet in advance of the train—something like that. . . . . With the immediate appliance of the air-brakes, under the circumstances as they then existed, it would be possible, I judge, to stop it within six or seven hundred feet."

In support of respondent's contention, counsel cites *Western Ry. etc. Co. v. Stone,* 145 Ala. 663, 39 So. 723, where it is held that it is negligence for a railroad to operate a locomotive and train of cars at night at so great a rate of speed that it is impossible to stop the train within the distance that the locomotive headlight illuminates the track.   In that case the court said:

"The tendency of the evidence was to show that at the time and place the train was being run under conditions that rendered it impracticable to prevent injury to the stock in question," and held that the headlight was insufficient.   In the case at bar it appears from the evidence of the engineer and fireman that the colt came upon the track within one hundred to one hundred and fifty feet of the locomotive, when it was first seen by them.   The engineer saw it go up the embankment onto the track about 150 feet ahead of the locomotive. This evidence is not contradicted, and it appears therefrom that the colt was not on the track until the locomotive was within about 150 feet of it—too near for the train to be stopped before it struck the colt.   So, if the railroad company had had a headlight of sufficient force and capacity to have enabled the engineer to have discovered an animal six or seven hundred feet ahead of the train, that would not have prevented the injury in this case, as the animal only came on the track when the locomotive was within about 150 feet of it. But it is contended by counsel for respondent that if the locomotive had been provided with a sufficient headlight, the engineer might have discovered this colt on the railroad right of way before it went upon the track.   Conceding that to be true, and that the engineer would have discovered the colt on the right of way within time to stop his train before it reached

the colt, would its being on the right of way and not on the track have required the engineer to stop his train, had he discovered it on the right of.way? It is contended on this point by counsel for appellant that even if the engineer had seen the colt prior to the time that he did, it would not have been his absolute duty to stop the train unless there was some indication that it was going upon the track, and that the mere fact that the colt was near the track would not impose upon the engineer the absolute duty of stopping the train.

In *Yazoo & M. V. R. Co. v. Wright,* 78 Miss. 125, 28 So. 806, the court held that an engineer is not chargeable with negligence in running over and killing an animal, for failure to stop his train or sound the whistle when he discovers the animals at the side of the track.

In *Yazoo & M. V. R. Co. v. Whittington,* 74 Miss. 410, 21 So. 249, it was held that a train need not be stopped nor its speed checked because animals are discovered near the track, unless there is a reasonable indication that they will go on the track.

In *Louisville & N. R. Co. v. Bowen* (Ky.), 39 S. W. 31, the court held that an engineer cannot be required to look out for animals on the side of a railway track, nor give the danger signal nor stop the train unless such animals are actually on the track or in such an attitude as to induce the belief that there will be danger of killing them.

In *Western Ry. Co. v. Lazarus,* 88 Ala. 453, 8 So. 877, the court held that when an animal is perceived near the track of a railroad, the diligence required of an engineer of a moving train is not the same as if it were on the track, and he is not required to stop or check the train unless the circumstances indicate that it is likely to move on the track or probably be injured if it remained stationary.

In *Peoria P. & J. R. R. Co. v. Champ,* 75 Ill. 577, the court held that the law imposes no obligation upon those in charge of a train of cars to stop the same upon discovering animals grazing near the railway track in anticipation that they may go upon the track and be injured, and the failure to do so is not negligence.

We think that the correct rule, and if an engineer observes an animal on the right of way and not on the track, and there are no indications that the animal will go upon the track before the train passes it, the failure to check the speed of the train or stop it is not negligence. When the colt was first seen by the engineer it was only about 150 feet from the locomotive, coming upon the track. The evidence shows that the engineer did everything possible to be done after the discovery of the animal to prevent the injury, and the contention of counsel for respondent in this case is that the negligence of the railroad company consisted in not having a sufficient headlight on said locomotive. From the evidence in this case, it does not appear that it was negligence of the engineer in not discovering the animal a sufficient distance ahead of the engine in which to stop the train before it arrived at the place where the animal entered upon the track; and there is nothing in the record to show that if the engineer could have seen the animal that distance ahead of the train, off the track and on the right of way, that its attitude at that time would have in any manner indicated that it was going upon the track. The evidence is therefore not sufficient to show that the accident could have been avoided if the locomotive had been provided with the best headlight in use. The headlight was sufficient to discover the animal before it went upon the track.

It is next contended that the court erred in admitting plaintiff's Exhibit "A," which is a letter written by the attorney of the defendant company to the respondent. This letter contains reference to a claim made by the respondent for the loss of said colt and the respondent testified that he made a written demand therefor. The oral testimony was let in without objection. That being true, we do not think it was reversible error to admit said letter in evidence. The claim itself as presented was the best evidence, of course, of what it contained, but secondary evidence having been let in of the fact that a written claim had been made, we do not think it was reversible error to admit said letter in evidence.

The giving of instruction No. 3 is assigned as error. It is contended that by said instruction the court instructed the

jury to the effect that the defendant's railroad right of way was not securely fenced.  Said instruction is as follows:

"If you find at the date of the killing of the said colt as alleged by the plaintiff, that the railroad of said defendant was not securely fenced and such fence was not properly maintained by the defendant at the point the said colt entered upon said road, then you should find for the plaintiff and assess his damages at the value of the colt so killed."

That instruction we construe as applying to the gate, which was a part of the fence.  That instruction leaves it for the jury to determine whether said gate was properly maintained, and it would have been better if the term "gate" had been used instead of "fence."  Said gate was a part of the fence, and no question was raised anywhere in the case in regard to the fence not being sufficient except where the gate composed a part of it.

The giving of instruction 12 is assigned as error.  That instruction was given upon the theory that an act passed by the legislature in 1901 (Sess. Laws, p. 87) provided that a claim in writing for such damages, signed by the owner or his agent, must be made upon the railroad company or corporation within  three months after the maiming or killing.  That law goes to the proof in such actions, and provides that the killing or maiming is *prima facie* evidence of the negligent killing, in case such written notice is served upon the company as therein provided.  That act, however, was repealed by section 5 of an act approved March 13, 1907 (Sess. Laws, p. 323). This case was tried in the probate court, while said law of 1901 was in full force and effect.  At that time the written claim provided for in said act was made *prima facie* evidence of the negligent killing by the railroad company.  Judgment was rendered in that court for the plaintiff.  An appeal was taken to the district court by the defendant, and just before the case was tried there, the act of 1907 repealing section 5 of the act of 1901, making such claim *prima facie* evidence, became a law.  If it be held that the repeal of 1901 applies to this action, proof of the negligent killing is required to be made by some other evidence than said written claim.  If the

plaintiff had no other evidence, it will readily be seen where that holding would affect a substantial right of the respondent. The law of 1907, if held to apply to this case, would operate to change the kind of evidence required to establish plaintiff's case. That holding might defeat his right to recover. To now hold that the repeal of that act destroyed the written claim as *prima facie* evidence would materially affect his right if not defeat it altogether. We therefore conclude that said act of 1907 did not repeal the act of 1901 so far as this case is concerned. (*Kennett's Petition,* 24 N. H. 139; *Willard v. Harvey,* 24 N. H. 344.) However, if the act of 1907 had been passed prior to the time the written claim was served on the defendant, if one were served, a different rule would apply; but the plaintiff had served his notice, brought his action, obtained a judgment in the probate court upon the rule of evidence then established by the law of 1901, and it would be most unjust to him now to require him to produce other evidence of the negligent killing, some two years after that act had occurred.

We recognize the rule laid down in *Wheelock v. Myers,* 64 Kan. 47, 67 Pac. 632, where the court said: "A party can have no vested right in a mere rule of evidence, and such rules, affecting as they do, only the remedy, the legislature may modify them." But that rule is not applicable to the facts of this case.

The cause must be reversed and a new trial granted, and it is so ordered. Costs are awarded to appellant.

Stewart and Ailshie, JJ., concur.