HINES, DIRECTOR GENERAL OF RAILROADS, *v.* THOMPSON.

[86 South. 450. No. 21345.]

RAILROADS. *Statutory presumption of negligent killing of mule over-come.*

Where the evidence shows that the killing of a mule by a running locomotive was unavoidable, 'the *prima facie* statute disappears.

APPEAL from circuit court of Monroe county.

HON. C. P. LONG, Judge.

Action by Clabe Thompson against Walker D. Hines, Director General of Railroads, operating the Mobile & Ohio Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and dismissed.

*J. M. Boone,* for appellant.

The engineer M. L. Dodd, who has had an experience of forty-seven years as locomotive engineer, is the only witness in the case who gave the facts as to the killing of the mule. No other witness knew anything about how the mule was killed, other than that it was evidently struck by the train.

Mr. Dodd states that he was running passenger train No. 2 at the time he struck this mule; that he was in his seat looking ahead when he saw the mule; that the mule

was then standing about twenty or thirty feet from the track facing toward the engine, and therefore had the appearance simply of a man standing there, and that the mule continued to stand still until the engine was about forty yards from it and then he turned and ran towards the track, and the engineer for the first time discovered that it was an animal; and that he was then too close to the mule to stop his train or to make any substantial reduction of the speed of the train before it reached the mule, forty yards away only; that instead of blowing his whistle he opened the cylinder cocks, as that would sometime frighten them off; that the mule didn't pay any attention to that but instead ran up to the engine and ran into the side of the engine, that if he had thrown on his emergency brakes he would not have reduced the speed of the train enough to notice it.

This mule was standing on the engineer's side of the track and the fireman was breaking up coal, or putting coal in the engine. This engineer said the mule was so close to him that he opened the cylinder cocks to try to make him turn; that it would make seven out of ten under the same circumstances turn, that the headlight of the engine was beyond the mule and the mule was in a dark space below the light and he could't see whether the mule turned his head to the south or the north, and therefore could not say whether the mule was hit on its left side or its right side; that his left side was toward the engine and just as he got up to the engine he turned, but he did not know whether he turned facing north or facing south. He said instead of slowing the engine after the mule made his break to the track he would have gone faster if he could; that the right of way along there was practically level, a roadbed of not over ten or twelve inches.

Under this statement of facts it is perfectly clear that the mule was not killed as a result of negligence of the defendant, but that defendant met the burden imposed by the *prima-facie* statute. This engineer was pulling a passenger train loaded with human beings. It sometimes happens

that running over live stock will derail a train and endanger the lives of the passengers thereon. We find nothing in the testimony of other witnesses in the case, or physical facts, that in any way conflicts with the testimony of the engineer. "There is no obligation on the servants of the company to keep a lookout for trespassing stock." *Y. & M. V. R. R. Co.* v. *Jones,* 71 So. 309.

This court, in the case of *Railroad* v. *Wright,* GR *Miss.* 127, said: "Surely a train load of human beings need not be jeoparized to avoid killing a mule. Only reasonable care is required in such case; such care as a discreet man would exercise to avoid injury. The engineer need not stop his trais or check his speed because animals appear on the side of the track, and under such circumstances to blow his whistle will often cause the very disaster sought to be avoided.

In the case of *Y. & M. V. R. R. Co.* v. *Brumfield,* 64 Miss. 637, this court speaking through CAMPBELL, J., said: "It is not the duty of an engineer to stop his train until there is an apparent necessity for it. Ordinarily, the discovery of animals or persons near the road does not require the stopping of the train. That should occur only when it seems to be necessary to avoid collision."

In the case of *N. O. R. R. Co.* v. *Bourgeois,* 66 Miss. 3, this court, speaking through ARNOLD, C. J., said: "It cannot be said to be the duty of a railroad company to check the speed or stop its passing train every time an animal is seen near its track, unless there is something to indicate danger or the necessity of the animal going upon the track; and if an animal appears upon the track so near the engine that collision cannot be prevented, no liability is thereby incurred. Impossibilities are no more required by law of railroad companies than of other persons. Something must be confided to the discretion of the engineer or person in charge of the train, and infallibility on his part is not expected or required." The above case stated the law of Mississippi on the issue involved in this case, and I know of no case in Mississippi holding to the contrary.

As stated in the *Wright case, supra,* the engineer is allowed under the law to exercise discretion to avoid injury, and if blowing the whistle is thought to be the wrong thing to do, then no whistle ought to be blown. In the case at bar, it is natural that the engineer would conclude that as long as the mule stood still off from the track it was advisable not to blow the whistle, as that would only have the effect, if any effect at all, to start the mule to running. As long as the mule stood still away from the track, prudence on the engineer's part necessarily directed that he do nothing that would have a tendency to start the mule to running, and it was an act of prudence in attempting to get by the mule while he stood still. When, however, the mule started towards the track only a hundred and twenty feet ahead of the engineer it being a passenger train running doubtless in the neighborhood of thirty miles an hour, it was evident to the engineer that blowing the whistle would do no good and that an effort to stop the train would be absolutely useless, so he adopted the method that he said from his long experience would seven times out of ten cause the mule to change its course and turn back, viz: the opening of his cylinder cocks, and by this noise and the flying of steam scare the mule away.

When we consider the experience an engineer has as to the danger of collision with animals derailing a train and also his actual experience in the different methods adopted of scaring animals off the track, then it is nothing more than common justice, as stated in the case, *supra,* that the law should grant some discretion to the engineer as to what is best to be done under the circumstances. No ironcald rule can be laid down which can clearly be said to be the best method under all circumstances to adopt to prevent injury to animals, and that is the reason that the law allows discretion to be exercised by an engineer.

If the engineer tells the truth, and there is nothing in the record that reflects in the least upon his integrity or the reasonableness of his story, it necessarily follows that a

collision with the mule was unavoidable and a peremptory
instruction ought to have been granted.

*McFarland & Holmes,* for appellee.

At the outset we desire to call the attention to the
difference in the facts in the cases cited by counsel for
appellant and the facts in this case. In the case of *Y. &
M. V. R. R. Co.* v. *Jones,* 71 So. 309, the engineer as soon
as he saw the mules on the track, four or five hundred feet
ahead of the train, applied his brakes, shut off the steam
and blew the stock alarm and did everything within his
power to prevent the injury as soon as he saw the stock,
so that the accident was unavoidable; and there was no
conflict at all in the evidence. But in the case at bar it
was shown that the track was straight for a mile south of
the point where the mule was killed, and according to the
testimony of the engineer who says he saw the mule stand-
ing twenty or thirty feet from the track, when he was two
hundred yards distant, and that the track was level with
the ground on each side, no effort was made to stop the
train or slow down, no alarm was given by the blowing of
the whistle or ringing the bell; in fact nothing at all was
done when the mule was first seen to avoid the injury,
although the engineer testified that if he had slowed up
when he first saw the mule the injury might not have oc-
curred. The engineer states that the mule came up and
ran into the engine from the east side of the track, which
if true would necessarily have caused the engine to strike
the mule on the left side (the train being headed north);
while the physical facts as testified to by the plaintiff show
that the mule was hit on its right side; this is a conflict in
the evidence, while in the Jones case there was no conflict.
In this case at bar the engineer admits that when he was
within forty yards of the mule and saw the mule attempting
to cross and realized that he was going to strike it, that
if he had applied his brakes then there was a possibility
of the mule getting over the track and not being injured.

There is further conflict in the testimony of the engineer and the fireman, the engineer testifying that when he kicked open the cylinder cocks the fireman, who was breaking up coal, knew something was wrong and asked what was the matter, and that he told him he had hit a mule but that the mule was gone now; the fireman testifies that the first information that he had from anyone that a mule had been hit near mile post 2444 was the next morning when they were coming back from Okolona the engineer told him about it.

In the case of *Y. & M. V. R. R. Co.* v. *Brumfield,* 64 Miss. 637, had counsel for appellant continued his quotation · it would have appeared as follows: "Unless appearances reasonably indicate danger of the object going upon the . track, an effort to stop is not required, but when existing conditions suggest the danger, regard should be had to them, and failure in this will constitute negligence, all of which a jury is to judge under proper direction."

In this case existing conditions suggested danger; the track through the Watkins farm was fenced on each side of the narrow right of way, and there had been a cattle gap not very far from the point where this mule was killed, which gap the appellant had allowed to be down for several months, which fact was known to the section foreman Austin Caine, as shown by page 13 of the record and was also known to the engineer, and was the only place through which the mule could have gotten to a place of safety; the powerful electric headlight blinded the mule, as shown by the testimony of the engineer, and made the place in which the mule stood when first seen by the engineer anything but · a place of safety.

The right of way was level with the track, and any reasonably prudent engineer should know that a mule standing only a few feet from the track, looking toward the engine, on level ground, with a fence on either side, blinded by electric headlight, would become frightened at the approach of the train and he as apt to run on or across the track as to run away from it. While this might

have been a place of safety for a human being, the conditions should certainly have indicated to the engineer the danger of a mule going upon the track, and he should have had regard to these existing conditions suggesting danger and failure by him to use the proper care and diligence to avoid the injury when he first saw the situation of the mule in this dangerous place consitutes negligence, and is a question for the jury to pass upon under proper instructions. Counsel for appellant certainly cannot complain that the instructions granted by the court did not amply cover all the law in the case, for, by several of the instructions granted, it remained for the jury to determine whether or not the mule was in a place of safety at the time it was seen by the engineer, and the jury by their verdict said that it was not and that the engineer did not use the proper care and skill in attempting to avoid the injury.

The case of *N. O. R. R. Co.* v. *Bourgeois,* 66 Miss. 3, holds merely that it is necessary for the railroad company to use reasonable care and diligence to avoid injury to stock on or near the track, and that proof of injury by the running of a train, under our present section 1985 of the code, makes out a *prima-facie* case of negligence, which may be rebutted and overcome by the railroad company and that they may acquit themselves of negligence in the matter if they can, and that all of the circumstances attending the injury are to be submitted to the jury and the case decided by the jury. The jury has in this case found that appellant was negligent and did not exercise due care and diligence to avoid the injury, and the verdict should not be reversed.

Sam C. Cook, P. J., delivered the opinion of the court.

The plaintiff sued the Mobile & Ohio Railroad Company for the value of a mule killed by the running train of the appellant. The evidence offered by the plaintiff made out his case under the statute. He proved that the mule was killed by the train; he proved the value of the mule; he proved that the railroad track was straight for a mile

south of the place where the animal was struck; he also proved that there was a wound on the right side of the mule. The engineer running the train testified that he first saw the mule standing near the track, and at first he thought it might be a human being, but when the animal started toward the train he discovered that it was a mule. He said it was impossible to stop the train or to avoid striking the mule. He also said that he did the only thing he could do, and that was to open his cylinder cocks, and he further testified that in seven times out of ten this would scare stock away from the track. When the mule was struck the pilot or "cowcatcher" had passed the mule, and the engineer did not know what part of the locomotive struck the mule.

As we view the evidence in this case, the physical facts did not warrant the jury in disbelieving the testimony of the engineer to the effect that he did everything he could have done to prevent the killing of the mule. "It seems to have been a clear case of suicide." An unbiased study of the evidence of the engineer convinces this court that he spoke the truth when he said that he did all he could have done under the circumstances. The physical facts do not contradict or tend to contradict the testimony of the only eyewitness. This was a "touch and go" situation confronting the engineer, and he did what he believed would most probably drive the mule from the track.

"Surely a trainload of human beings need not be jeopardized to avoid killing a mule. Only reasonable care is required in such cases." *Railroad* v. *Wright*, 78 Miss. 127, 28 So. 806.

The defendant met and overcame the presumption of the statute, and the court should have directed a verdict for the defendant.

*Reversed and dismissed.*