NEW ORLEANS & N. E. R. CO. *v.* MARTIN.

[89 South. 621, No. 21876.]

1. RAILROADS. *Reasonable care required to avoid injuring animals discovered.*

A railroad company in operating its trains is only required to exercise reasonable care to avoid injury to animals on or near its tracks after discovering their position of peril; it is not required to do everything possible to avoid the injury; the standard of action of the average man under the circumstances is the criterion which governs; in the operation of its trains it does not have to check the speed of its trains until there is a reasonable apprehension that animals near the track will go thereon and receive injury. And applying these principles in a case where the evidence shows without conflict that the injury complained of could not have been avoided by the exercise of reasonable care, it is the duty of the court to instruct the jury to return a verdict for the railroad company.

2. RAILROADS. *Speed statute inapplicable beyond municipal limits.*

The speed statute, Code 1906, section 4043, Hemingway's Code, section 6667, prescribes the speed limit of trains "within" cities, towns, and villages, not without; and its object is to prevent injuries to persons and property situated "within" the limits of municipalities, not persons and property situated without such limits; and the statute has no application where the injury was inflicted outside of the municipal limits although the train just before inflicting the injury had been running within such limits at a greater rate of speed than the statutory rate.

APPEAL from circuit court of Clarke county.

HON. J. D. FATHEREE, Judge.

Action by L. E. Martin against the New Orleans & Northeastern Railroad Company. Judgment for plaintiff, and the defendant appeals. Reversed, and judgment rendered for the defendant.

*Bozeman & Cameron,* for appellant.

This is a case without liability. The engineer did everything within his power to prevent killing the cow, after she was discovered in a position of peril. Having done this, he fulfilled the full duty owed by the railroad company, and the peremptory instruction should have been granted. The case falls directly in line with the line of cases decided by this court, holding that there was no liability. We content ourselves with listing the cases: 123 Miss. 634; 124 Miss. 292; *Hines, Director General,* v. *Andrews,* 86 So. 801 (Advance sheets) ; *Hines, Director General,* v. *Thompson,* 86 Mo. 450 (Advance sheets) ; *R. R. Company* v. *Morrison,* 107 Miss. 300, 65 So. 275; *R. R. Company* v. *Jones,* 111 Miss. 159, 71 So. 309; *R. R. Company* v. *Frazier,* 104 Miss. 372, 61 So. 547; *R. Company* v. *Wright,* 78 Miss. 124, 28 So. 806; *R. R. Company* v. *Whittington,* 74 Miss. 410, 21 So. 249; *R. R. Company* v. *Bourgeoi,* 66 Miss. 3, 5 So. 629; *R. R. Company* v. *Brumfield,* 64 Miss. 637, 1 So. 905,

It appears, therefore, that by a long and unbroken line of decisions, this court has definitely declared the duty owed to trespassing stock in the following propositions: (1) No duty is owed to keep a lookout; (2) reasonable care required after animal discovered in position of peril; (3) standard action is that of average men under existing circumstances; (4) engineer does not have to check speed of his train until there is reasonable apprehension that animal will go on track. Under these propositions, the railroad company has entirely exculpated itself and the judgment should, we submit, be reversed and the case dismissed.

*W. M. Estes,* for appellee.

Attorneys for appellant have cited so many cases of law to sustain their position, and this question seems to have been before this court so often by appellant and other common carriers of the state to escape payment of judgments rendered against them by the juries over the state for damages and loss to property, that we deem it unnecessary to burden this brief with any more law, but will devote our time and call the attention of this court to the facts in the case.

As stated in brief of appellant, the engineer in charge of the train which killed this cow, was the only eye witness, as far as has been ascertained, to said killing, and it seems both of us are depending upon his testimony very largely, to sustain our different positions. The testimony of this engineer, G. T. Reber, will be found on pages from and including 28 to and including 39 of both direct and cross-examination.

The engineer said he first saw said cow when he was a quarter of a mile away from her, on a straight track; that she was walking across the track at the time he first saw her, and she was going towards the east side; he made no effort to stop his train, nor even to slow down the speed of said train, at that time, although he admits he had a train of fifty-one cars and two engines, in all between seven hundred or eight hundred yards of train heavily loaded, and he was running according to his cross-examination, page 32, at the rate of twenty-five miles per hour, and that he made no effort to reduce the speed of said train, nor gave any alarm until he was within one hundred to one hundred and fifty feet of said cow, then according to his testimony, he blew the whistle, applied the brakes, but struck the cow while running at the rate of twenty-five miles per hour, and according to the testimony of L. E. Martin, appellee, said cow was right near the corporation line of the town of Pachuta when she was struck by said train.

G. T. Reber, engineer, further admits he was running at the rate of twenty miles per hour when he passed through the town of Pachuta, just before he struck this cow, and admits he was exceeding the speed limit of the train going through incorporated towns, cities and villages by at least ten miles per hour to fourteen miles per hour, and we submit the statement in all earnestness and fairness, that had said engineer not flagrantly and wantonly violated the law in running his train through Pachuta at the dangerous rate of twenty miles per hour, which he admits, then this cow would never have been killed; and again, when he first saw said cow, had he applied his brakes at that time, and slowed down, instead of waiting until he was right near her, he would not have struck her; and in this connection we desire to call the attention of this court to the testimony of the appellee with reference to the condition of the fence and cattle gap, when he said: "the fence was a very fair fence but a mighty poor stock gap." Page 11 of record: "And that cattle walked in and out every day and we believe we have a right to assume that the law requires either appellant to keep his fences and cattle gaps in such good condition that it will be impossible for cattle to get in and out of the railroad right of way, or in case they do not, as in the present case, that they pay for such cattle as they kill by reason of their negligence in not keeping them off their tracks.

Appellant tries to exculpate themselves by showing by witness G. T. Reber, that the condition of equipment on engine and train that killed said cow, was good, and that all employees on that particular train were competent, and while this may be true, yet we do not believe this court will hold that appellant can permit their fences and cattle gaps to get in such condition that cattle and stock can get on their tracks at will, and that they can dash through incorporated towns and populous sections of the country at a rate of speed three or four times greater than is permitted by law before hardly getting out of corporate limits, incur a liability, such as they did in this case, and then

plead a well-equipped train and engine, competent employees, and trespassing by the property destroyed and thus escape payment for the loss caused by them, plead justification, and attempt to entirely exculpate itself. I say, we do not believe this court will reverse this case on the facts stated, nor the law cited, but we confidently look for this court to affirm the judgment of the lower court as to both law and facts.

ANDERSON, J., delivered the opinion of the court.

The appellee, Martin, recovered judgment in the court below against the appellant, New Orleans & Northeastern Railroad Company, for damages in the sum of seventy dollars and costs of the case, from which the appellant prosecutes this appeal. The suit was for the value of a cow, the property of appellee, which is claimed to have been killed by the appellant through the negligent running of one of its freight trains. The only assignment of error is that the court below ought to have directed a verdict for the appellant, an instruction to that effect having been asked by the appellant and refused by the court. There is no conflict in the evidence as to how the killing of the cow took place. It occurred three-fifths of a mile by actual measurement north of the north line of the corporate limits of the village of Pachuta. The cow was struck and run over by a freight train going north consisting of fifty-one cars and drawn by two engines, commonly known as a "double header." The only eyewitness was the engineer in charge of the front engine who controlled the running of the train, including the sounding of its cattle alarm and the application of its brakes. He testified that the train with the two engines was about twenty-one hundred feet in length; that from near the north line of the corporate limits of the village of Pachuta for some distance north the track was straight and downgrade; that from this point back some distance south through the village of Pachuta it was downgrade; that therefore the point referred to, a short distance

north of the north line of the corporate limits of the village, was a hill or elevation looking both north and south; that on reaching a point somewhere about this elevation, while running about twenty-five miles an hour, he saw the cow about a quarter of a mile ahead crossing the track from west to east; that he neither sounded the stock alarm nor applied the brakes because, judging from appearances, the cow would reach a place of safety before the train could get to the point where she was; that she did pass over the track to the east to a point outside of the sweep of the train and to a place of safety and appeared to be starting down the hill, but when the front part of the train was within one hundred to one hundred and fifty feet of her she suddenly turned around and started back to the west side of the track but failed to get out of the way of the engine, the west side of which struck and killed her; that as soon as he observed that the cow had turned to go back, to avoid striking her he sounded the stock alarm and applied the brakes, but almost the entire length of the train passed over the cow before it could be stopped. He testified that even from where he first saw the cow, about a quarter of a mile away, it would have been impossible for him to have stopped the train before striking her, the truth of which was demonstrated by the fact that in making the stop that was made the train ran about its full length— about two thousand feet—after the application of the brakes. He showed by his evidence that the train was properly equipped and manned and everything was done that could have been done to avoid the injury.

The engineer showed by his evidence that the speed of the train in passing through the municipality of Pachuta was probably as much as twenty miles an hour; that therefore in running through it the speed statute was violated.

It has been determined by numerous decisions of this court that in operating its trains a railroad company is only required to exercise reasonable care to avoid injury to stock on or near its track after discovering their position of peril; it is not required to do everything possible

to avoid the injury; that the standard of action of the average man under the circumstances is the criterion; that in the operation of its trains it does not have to check their speed until there is a reasonable apprehension that such stock will go on the track; and that if the evidence shows without conflict that the injury complained of could not have been avoided by the exercise of reasonable care, then it is the duty of the court to instruct the jury to find for the railroad company. *Hines, Director General,* v. *Andrews,* 124 Miss. 292, 86 So. 801; *Hines, Director General,* v. *Thompson,* 123 Miss. 634, 86 So. 450; *Railroad Co.* v. *Morrison,* 107 Miss. 300, 65 So. 275; *Railroad Co.* v. *Jones,* 111 Miss. 159, 71 So. 309; *Railroad Co.* v. *Frazier,* 104 Miss. 372. 61 So. 547; *Railroad Co.* v. *Wright,* 78 Miss. 125, 28 So. 806; *Railroad Co.* v. *Whittington,* 74 Miss. 410, 21 So. 249; *Railroad Co.* v. *Bourgeois,* 66 Miss. 3, 5 So. 629, 14 Am. St. Rep. 534; *Railroad Co.* v. *Brumfield,* 64 Miss. 637, 1 So. 905.

We are unable to find from the evidence in the record that the employees in charge of this train failed to do anything they could have reasonably done to avoid the killing of the cow. There is nothing in the physical facts surrounding the injury which throws any doubt whatever on the testimony of the engineer, the only eyewitness.

It is contended, however, if this train had not been run through the municipality of Pachuta at an unlawful rate of speed that the engineer, when he first observed the cow, would have had the train under such control that he could have stopped it before striking the cow. In other words, it is contended that the unlawful speed through the municipality was the proximate cause of the injury. The speed statute, section 4043, Code of 1906, Hemingway's Code, section 6667, prescribes the speed limit of trains "within" cities, towns, and villages, not without. And its object is to prevent injuries to persons and property situated "within" the limits of municipalities, and not persons and property situated without such limits.

It was held by this court in *Mississippi Central Railroad Co.* v. *Butler*, 93 Miss. 654, 46 So. 558, that this statute had no application when the injury was inflicted outside of the municipal limits, although the train just before inflicting the injury had been running within such limits at greater speed than the statutory rate. To the same effect is *Hines, Director General,* v. *Moore,* 124 Miss. 500, 87 So. 1. It would be a matter of too much speculation as to what would or would not have happened if the train in question had not violated the speed statute. It might have reached the point where the cow was killed, say, two or three minutes later than it did, running at a speed of not more than six miles an hour, and still the cow might have been found on the track and killed by the train without any fault on the part of the employees operating it.

The court below should have directed a verdict for the appellant.

*Reversed, and judgment here for appellant.*