Pascagoula St. Ry. & Power Co. *v.* McEachern.

[69 South. 185.]

1. Negligence. *Concurrent negligence. Street Car. Railroads. Liability for injuries. Crossing accident. Question of fact. Appeal and error. Harmless error. Instructions.*

Where plaintiff was injured while driving an automobile, due to being forced to turn his car out of the road to escape collision with an approaching street car at a crossing, and where the street crossing was visible to plaintiff, but he did not see it on account of momentarily forgetting that he was approaching the crossing. In such case while plaintiff was clearly guilty of negligence which contributed to his injury, still under our concurrent negligence statute, he was entitled to recover if the negligence on the part of the motorman proximately contributed to his injury.

2. Same.

In such case whether or not the motorman of defendant's car negligently failed to sound the gong or to slow up, was a question for the jury.

3. Railroads. *Crossings. Care required.*

Where a driver of an automobile and an electric car were both approaching a crossing of an interurban electric railway company at the same time, it was the duty of the driver and the motorman in charge of the electric car to exercise due care to avoid collision, and if either saw or could have seen by the exercise of reasonable care, that the other intended to cross first and that by reason thereof a collision was imminent, it was his duty to stop, if necessary to avoid a collision and not to do so was negligence, notwithstanding that the other in attempting to cross ahead of him, may have also been guilty of negligence.

4. Same.

In such case if the motorman failed to sound his gong after seeing that the automobile was approaching the crossing, that fact alone, justified the jury in finding that he was guilty of negligence.

5. Appeal and Error. *Harmless error. Instructions.*

Where plaintiff by his instructions assumes a greater burden than he is called upon to bear under the law, this cannot be complained of by the defendant.

Appeal from the circuit court of Jackson county.

Hon. T. H. Barrett, Judge.

Suit by Dr. C. G. McEachern against the Pascagoula Street Railway & Power Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Ford & White,* for appellant.

In our original brief in this case, we took the position that the action of the court in overruling the demurrer, filed by the appellant to the declaration of the appellee, and thereafter instructing the jury that the appellee while driving an automobile along a public highway would be excused from negligence in driving his ma-

chine at a rapid rate of speed, provided the jury believed that he, the appellee, temporarily forgot about the existence of the crossing, was wrong. Since the preparation of that brief, we have found one case bearing directly on this proposition, which establishes exactly what we contend. It is the case of *McDonald* v. *Yoder,* 80 Kan. 25, 101 Pac. 468.

In that case the court held that a chauffeur in driving his machine on a public highway must keep a rigid watch ahead for vehicles and pedestrians, and at the first appearance of danger take proper steps to avert it and if necessary to stop the machine and even the motor if this is necessary and practical. He will be presumed in the case of accident to have seen what he should and could have seen in the performance of this duty.

This is bound to be the law with reference to the driving of a dangerous machine like an automobile, in a public place. To hold as the circuit court held in this case that the driver of an automobile would be permitted to temporarily forget the railroad crossing of the street by the street railroad and run at such a high speed that he was compelled to go in the ditch to avoid colliding with a car, is simply a license to people occupying that position to make a reckless use of the streets. In this case if appellant had simply looked ahead while driving several hundred feet down the street no possibility of an accident would have occurred.

The case of *Savoy* v. *McLeod,* 48 L. R. A. (N. S.) 971, decided by the supreme court of Maine in the month of November 1913, and since this case was tried in the circuit court, was a case in which the court was called upon to define the duties of the driver of an automobile upon a public highway and the language of that court on this important subject applies with such force to the case at bar that we quote it.

It would be of little avail to analyze the testimony in this case on the question of liability. The report shows

that there was ample room for the defendant to have guided his machine safely past the team in which the plaintiff was riding had he been paying proper attention to the rights of the team. In view of the accidents and tragedies that are daily occurring in the operation of automobiles, the present case seems an available opportunity for a statement of the familiar rules of law with more definite application than has yet been announced in this state, to the duty of persons who undertake to drive upon the public highways the engines of power and peril now represented in the mechanism of the automobile. If not strictly a matter of judicial notice, it is a matter of common knowledge, that death and injury are of daily occurrence due to the inefficiency, negligence, or reckless conduct of those who are permitted to engage in the operation of these powerful machines. A mania for speed seems to have seized the minds and dominated the action of many of the automobile operators, whether owners or chauffeurs. This class of drivers apparently assume that the foot passenger or team will, upon their approach, so hastily change its course as to relieve the operator from any diminution of speed, that he may have his machine under control and avoid an accident if the unexpected happens and the passenger or vehicle or child does not, as quickly as anticipated, obey the mandate of his whistle or horn. It is also a matter of common knowledge that all adults of ordinary prudence do not always immediately do the right thing or exercise the best judgment in cases requiring quick thought and quick action. 48 L. R. A. (N. S.). This failure of men to act alike, under like circumstances, is so general in its application that it must be regarded as a habit which all persons, coming in contact with human action, must be held to anticipate as an existing condition. In view of this habit, due to the inherent frailties of human nature, and the rule of law that the degree of diligence deemed in law suffi-

cient to constitute due care is always commensurate with the danger to be avoided, it is the opinion of the court that the driver of an automobile in the public highways constantly traveled by pedestrians and teams and occupied by children of all ages should, to establish due care, exercise so high a degree of diligence in observing the rights of a foot passenger or team when approaching them as to enable him to control it, to stop it if necessary to avoid a collision which cannot be regarded as a pure accident or due to contributory negligence.

But it may be claimed that this rule of diligence renders the operation of automobiles impracticable. If so, let the business stop. They should be required to do everything that human agency can do to avoid taking human life. This court declared in *Cameron* v. *Lewiston, B. & B. Street R. Co.*, 103 Me. 482, 18 L. R. A. (N. S.) 497, 125 Am. St. Rep. 315, 70 Atl. 534, that "the court should establish as the law the rule which prevents injury or loss of life, rather than that which invites or even permits it." This rule is based upon reason and good public policy. But the claim of impracticability is not well founded. Prudent drivers neither kill children nor injure men, except at very rare intervals, and then only in cases of unavoidable accident or contributory negligence. But, whatever the result, these requirements are essential to an effective rule of safety, and are in harmony with the rights of travelers upon the highway and of children in the streets, however they may come there.

But no new principles of law have been evolved for express applications to the operation of automobiles. We have simply endeavored to apply the well-known principles of law in a specific way to this class of cases, as has been done in the cases of steam roads and electric cars. The foundation of every principle of law invoked is found in what might be regarded as a legal maxim (the very foundation of the rule underlying

the doctrine of due care and negligence), that in all human action involving hazard the law imposes the duty of using diligence as is commensurate with the danger to be avoided. This rule applies to the operation of steam railroads, upon the ground of public policy and safety, and finds expression in *Libby* v. *Maine C. R. C. Co.,* 85 Me. 34, 20 L. R. A. 821, 26 Atl. 934, in this language: "The law requires common carriers of passengers to do all that human care, vigilance, and foresight can under the circumstances, considering the character and mode of conveyance, to prevent accident to passengers. To require anything less would be to leave the lives of persons in the hands of the reckless, and unprotected against the negligent and incautious."

In the case above cited, where there was a collision between an automobile and a team in a road, the driver of the automobile insisted that he gave notice of his approach by blowing a horn and the fact that the driver of the team did not see fit to get out of his way was a sufficient excuse for him, the driver of the automobile, running into the team. It was a case exactly like the case at bar in that the driver of the machine was driving at such rate of speed that he could not control its motion when it became necessary to avoid trouble at the critical moment, that is, when it became apparent that he was to strike the vehicle in front of him. Had the machine been under control no such accident could have happened, and that court held that a driver of an automobile under such circumstances would be responsible for the results of such accident. In the case at bar no possibility of an accident could have arisen had the appellee been running his machine, either at a reasonable rate of speed, or had he been looking ahead of him at the time. But his attention being called away in conversing with the gentleman who was in the machine with him and temporarily forgot the existence of the street car which crosses the track, made him run a distance

of one hundred or one hundred and fifty feet after the car had entered upon the street, and in order to avoid a collision he had to run into a ditch. His contention that he had a right to forget the existence of the street car and that the street car company was charged with the duty of seeing that he had lost control of his machine, or had forgotten his surroundings, was submitted to the jury by the lower court on that theory, and the jury in this case as it will do in every case in which a question of fact however unsubstantial it may be in which there is a controversy between a person and a street car company, found the fact against the street car company. There was absolutely no conflict in the testimony that when the street car reached the street upon which the appellee was driving his automobile that the machine was from seventy-five to one hundred feet away, and thereupon the street car proceeds to cross the track under the assumption that the appellee had control of his machine and would not attempt to run over the street car. The court knows that it would be an impossibility for a driver of a street car, or any other person, standing upon the side of a street to ascertain by simply looking at a man driving an automobile that he had temporarily forgot his surroundings, and to wait until he went by. To authorize this verdict to stand in this state of facts is simply a license to every man driving an automobile at any reckless rate he pleases, and then be excused from responsibility by saying that he "temporarily forgot about the crossing."

*Denny & Denny,* for appellee.

We assert with confidence that momentary forgetfulness excuses a person from seeming negligence, or, in short, it is not negligence, in this state. And that the same doctrine obtains in other states, we cite *McQuillan* v. *Seattle* (Wash.), 45 Am. St. Rep. 799; *Kelly* v. *Blackstone* (Mass.), 9 Am. St. Rep. 730; *Maloy* v. *St.*

*Paul,* 54 Minn. 398; *Dorsey* v. *Phillips,* 42 Wis. 583; *Givandi* v. *Electric Co.* (Cal.), 48 Am. St. Rep. 114; 5 Thomp. Neg., secs. 6240 & 6266, and White's Sup. 884.

Numerous other decisions might be cited of similar import as the foregoing cases, in all of which it is held that momentary forgetfulness is not negligence, or that it, at least, is a question for determination of the jury. In this case it has been determined by a jury.

The appellant urges the difficulty of disproving the claim of momentary forgetfulness as a reason why the doctrine should not be recognized. We cannot believe he is serious in this. If difficulty of proof were to control, actions charging fraud and many other civil and criminal actions would cease. Circumstantial evidence still obtains and the circumstances attending most, if not all, the cases where momentary forgetfulness is set up would be sufficient to sustain or defeat it.

Appellant overlooks entirely our statute in the Acts of 1910, page 125, providing that contributory negligence, in personal injury cases, shall not bar a recovery. Under that statute none of the cases referred to by appellant are applicable in this case, as contributory negligence is no longer a defense in this state. This would also be true if we had no such statute, inasmuch as prior to enactment of the statute, temporary forgetfulness was excepted from the rule announced by appellant, that one seeking damages for personal injury because of the negligence of the defendant must be himself free from fault or contributory negligence. Again, the argument of appellant, and the cases he cites, are not applicable here, because it is shown by the pleadings and testimony that after the peril of appellee was discovered, appellant could have checked or stopped the street car and avoided the accident. And so said the jury by its verdict.

On the question of hasty action of appellee in the emergency confronting him at the crossing, we under-

stand the well established rule to be that when one is required to act suddenly and in the force of imminent danger, he is not required to exercise the same degree of care as if he had time for deliberation and in the full exercise of his judgment and reasoning faculties, and he may recover for injury sustained, although the hazard he selects results in injury which he might have escaped had he chosen the other.—*I. C. R. R. Co.* v. *Anderson,* 184 Ill. 294, 56 N. E. 331; *Galesburg Electric Co.* v. *Barrlow,* 108 Ill. App. 509; *Cleveland R. R. Co.* v. *Baker,* 106 Ill. App. 500; *Salter* v. *Utica R. R. Co.,* 88 N. Y. 42; *Coulter* v. *American Express Co.,* 56 N. Y. 585. And this especially true where the peril has been caused by another, or as stated in extended note to *Lemony* v. *Springfield Street R. Co.* (Mass.), 37 L. R. A. (N. S.), 44: "The test of conduct of one put in a sudden emergency by the negligence of the defendant is that of a person of ordinary prudence confronted with the same circumstances; therefore, if his conduct bears this test, he is not guilty of contributory negligence for mistaking the way of escape from the emergency." Numerous citations from the various states are given in support of this rule, among them, that of *A. & V. R. R. Co.* v. *Davis,* 69 Miss. 444, 13 So. R. 693. See, also, *Christian* v. *I. C. R. R. Co.,* 71 Miss. 237, 12 So. Rep. 710.

Appellee contends that his hasty judgment and conduct in turning his automobile into the ditch was without fault on his part, and rendered necessary or prudent because of the negligence of appellant. And he bases this contention on the following grounds: First, the statute of 1910 abolishing the defense of contributory negligence. Secondly, momentary forgetfulness pleaded and proven. Thirdly, the facts established by the testimony heard on the trial. The first ground stated above is ample and conclusive on this question and in support of our contention. The statute is clear and positive in its terms and meaning and we are content to merely

refer to it. The second ground has been hereinabove construed from appellant's standpoint and we wish to supplement same only by reference to the case of *A. & V. R. R. Co.* v. *Davis*, 69 Miss. ———.

The instructions given for plaintiff were not at variance, but in strict accord, with the pleadings and proof in the case, and those given defendant covered all that defendants were entitled to, and under such instructions the case was fairly submitted to the jury. And, while the amount awarded the plaintiff was considerably less than one-half the actual loss and damage sustained, as shown by the uncontradicted testimony of Dr. McEachern, and while we felt that the court should have granted the instructions requested by plaintiff touching the damage done the automobile, we, having taken no cross-appeal, are not in position to complain of it. That the jury did not award excessive damages, is all that we contend for now, notwithstanding, our failure to get an instruction covering the damages to the automobile as well as to the person of Dr. McEachern by plaintiff requested, to which we still believe was plaintiff's due.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee for damages alleged to have been sustained by him because of a collision with one of appellant's street cars. One of the assignments of error is that the court below should have sustained a demurrer which was interposed to the declaration. The several grounds of this demurrer simply set forth in different language that it appears from the allegations in the declaration that appellee's own negligence contributed to his injury, and therefore he should not be permitted to recover. Conceding that the declaration does on its face show that appellee's own negligence contributed to his injury, he was not, because of the provisions of our concurrent

negligence statute, barred from a recovery by reason thereof.

It appears from the evidence that in January, 1912, appellee, accompanied by J. W. Griffin, was traveling from Moss Point to Pascagoula in an automobile along the public road; the automobile being driven by appellee. This road is crossed diagonally at a point between Moss Point and Pascagoula by appellant's street railroad, on which cars are propelled by electricity. When the automobile arrived in about twenty-five or thirty feet of this crossing, appellee's attention was called by his companion to one of appellant's cars which was approaching the road, and was then within about fifteen or twenty feet from the edge thereof. He immediately, in order to avoid a collision with the car, turned the automobile into a ditch, resulting in some injury, both to himself and the automobile. The speed at which the automobile approached the crossing was about twenty miles an hour. Appellee knew of the crossing, having passed over it frequently, but at the time was absorbed in conversation with his companion, and "was not thinking of the street car," neither was he looking ahead to see where and into what he was driving, so that he first saw the car when his attention was called to it by his companion, who also had then seen it for the first time. The crossing could have been seen by appellee for some distance before he reached it. The motorman, according to his testimony, saw the automobile when the street car was in about two hundred feet of the crossing; the automobile being then about four hundred feet therefrom. The motorman stated that, as he was nearer the crossing than the automobile was, he thought that he had the right of way, but that he sounded his gong, and reduced the speed of the car to four miles an hour. Appellee and his companion both testified that they did not hear the gong, and that the car was running at about the rate of fifteen miles an hour. One of the passengers

on the car testified that the gong was sounded, but on cross-examination stated that he could not be certain that this was true, but thought he remembered that the gong was sounded. He also testified that the car approached the crossing at a speed of eight or ten miles an hour.

Appellee was clearly guilty of negligence which contributed to his injury, but nevertheless, under our concurrent negligence statute, he was entitled to recover in event negligence on the part of the motorman proximately contributed to his injury.

Whether the motorman was guilty of negligence was, on the evidence, a question of fact for the determination of the jury, so that the court below committed no error in refusing to grant appellant a peremptory instruction.

The rights of appellee and of this motorman at this crossing were equal, and it was the duty of each to exercise reasonable case in order to avoid a collision with the other. At the rate these vehicles were traveling, they would necessarily, as they in fact did, reach the crossing at the same time; and, in order to safely avoid a collision, it was necessary for one of them to either slow up or stop, and if either saw or could have seen, by the exercise of reasonable care, that the other intended to cross first, and that, by reason thereof, a collision was imminent, it was his duty to stop, if necessary, in order to avoid a collision, and not so to do was negligence, notwithstanding that the other, in attempting to cross ahead of him, may also have been guilty of negligence. 2 Nellis on Street Railways, sec. 388; 36 Cyc. 1516; 18 Amer. & Eng. Ency. Law, 582; 2 Elliott on Roads and Streets, sec. 1081; Clark's Accident Law, pp. 235, 269, 319; *Knox* v. *Street Railway,* 70 N. J. Law, 348, 57 Atl. 423, 1 Ann. Cas. 164; *Koester* v. *Decker,* 22 Misc. Rep. 353, 49 N. Y. Supp. 276. If this motorman failed to sound his gong after seeing that the automobile was approaching the crossing, that fact alone

justified the jury in finding that he was guilty of negligence; and whether he did sound his gong was for the jury's determination.

By one of appellee's instructions the jury was charged that:

"If you believe from the evidence in the case that the plaintiff was traveling on Telephone Road towards the point where defendant's car line and track crosses such road, and you believe from the evidence in the case that the speed at which plaintiff's automobile was traveling was not unusually excessive and not dangerous under usual or ordinary conditions, and you believe from the evidence in the case that plaintiff, then and there while traveling upon said road, momentarily forgot the crossing of said road by defendant's car line and track, and you also believe from the evidence in the case that the car of the defendant was operated in a negligent manner," etc., "then your verdict should be for the plaintiff."

Exception is taken to the following portion of this instruction:

"And you believe from the evidence in the case that plaintiff then and there, while traveling upon said road, momentarily forgot the crossing of said road by defendant's car line and track."

Our concurrent negligence statute was not invoked by appellant in the court below, but it sought by all of the instructions requested by it to obtain a verdict wholly in its favor in event the jury should find that appellee was not in the exercise of due care at the time of the collision. This theory of appellant as to its liability was participated in by appellee in requesting the instruction here complained of, and by it appellee assumed a greater burden than he was called upon to bear, for he was entitled to a verdict in event negligence on the part of appellant's motorman proximately contributed to his injury, notwithstanding his own negligence may have

also contributed thereto. This being true, it is immaterial whether that portion of the instruction objected to is correct or not. Had our concurrent negligence statute been invoked by appellant, it may be that a different question would be presented, as to which we express no opinion.

*Affirmed.*