HINDS, DIRECTOR GENERAL OF RAILROADS, ET AL. *v.* MOORE, ET AL.

[87 South 1, No. 21175.]

1. RAILROADS. *Negligence held question for jury.*

Where the testimony is conflicting as to the rate of speed at which a train was running before its collision with an automobile on a street crossing, the plaintiffs' testimony, estimating the speed at thirty or thirty-five and the defendant's at ten or fifteen miles an hour, the testimony being in conflict as to whether or not the proper signals were given for the approach of the crossing, the plaintiffs' witnesses testifying that these signals were not given, and the defendant's witnesses that they were, the testimony being in conflict as to whether or not the accident occurred within or without the corporate limits of the municipal-

ity, and the testimony of the defendant tending to show that a
proper lookout was kept for the crossing, and an attempt to stop
the train was made as soon as the automobile was discovered ap-
proaching the track, the testimony being in conflict as to the
rate of speed of the automobile, it is improper to instruct the
jury to return a verdict in favor of the plaintiff. The material
conflicts in the testimony make it a question of fact for the jury
to decide whether or not the defendant railroad company was
guilty of negligence.

2. RAILROADS. *Fifteen miles an hour when approaching corporate
limits not negligence per se.*
   It is not negligence *per se* for a train to run at a rate of fifteen
   miles an hour just before it enters the corporate limits of a
   municipality.

3. RAILROADS. *Six miles an hour statute inapplicable outside munici-
pal limits.*
   Section 4043, Code 1906 (section 6667, Hemingway's Code), mak-
   ing railroad companies liable for injuries resulting from the
   running of trains within a municipality at a rate of speed ex-
   ceeding six miles an hour, has no application where the injury
   was inflicted outside of the municipal limits, although it may
   be impossible to reduce the speed of the train to six miles an
   hour when it enters the municipal limits.

4. RAILROADS. *Reasonable lookout and speed required at crossing.*
   On approaching a frequently used crossing it is the duty of the
   servants of the railroad company to use reasonable care and dili-
   gence in maintaining a proper lookout, and to approach the
   crossing at a reasonable rate of speed, and in this case these
   were questions of fact to be decided by the jury under the con-
   flicting testimony.

5. RAILROADS. *Proximate cause of accident held question for the jury.*
   It was also a question of fact for the jury to decide whether or not
   the negligence of the servants of the defendants, if they be-
   lieved they were negligent, was the approximate or one of the
   contributing causes of the accident.

6. NEGLIGENCE. *Child eight years old prima facie incapable of con-
tributory negligence; exceptional capacity may be shown; pre-
sumption not rebutted by showing rendition of usual services.*
   A child eight years of age is *prima-facie* incapable of contributory
   negligence, but if he is of exceptional capacity, or especially pre-
   cocious for his age, this may be shown. This presumption is

not rebutted by testimony that he rendered the ordinary services to his parents that a child of his age usually renders.

7. Death. *Instruction held to allow double recovery for minor's services.*

In a suit for damages for the death of an eight year old child under chapter 214, Laws of 1914 (section 501, Hemingway's Code), where the jury was instructed to find a lump sum as a reasonable compensation for the life expectancy of a child and in addition thereto a reasonable compensation for the value of the services during minority, this instruction is inaccurate. The expectancy of life is calculated from the death of the deceased, and under the first part of the instruction compensation was recovered during the period of minority, and this compensation was recovered in addition thereto by the latter part of the instruction.

Appeal from circuit court of Lauderdale county.

Hon. R. W. Heidelberg, Judge.

Action by Martha Moore and others against Walker D. Hines, Director General of Railroads, and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

*A. S. Bozeman* and *B. F. Cameron, Jr.,* for appellants.

Assuming that the train had been running at a speed in excess of six miles an hour—say twelve to fifteen miles an hour as the jury had the right to find from the testimony, when outside the corporate limits but that the speed was reduced to six miles an hour immediately at the corporate limits, then we submit that it was for the jury to say whether or not the excessive speed of the train was the proximate cause of the injury. *Louisville, etc., R. Co.* v. *Caster,* 5 So. 388; *Mississippi, etc., R. Co.* v. *Butler,* 93 Miss. 654.

4. The court below erred in giving instruction No. 3, asked by the plaintiff, being the instruction on the measure of damages, as follows: "The court instructs the jury for the plaintiffs: That if the jury find for the plaintiffs, they should find a lump sum which the jury may be-

lieve from the evidence will be a reasonable compensation for the life expectancy of Judge Moore, Jr., and in addition thereto will be a reasonable compensaiton for the value of any service which the jury may believe from the evidence if any, that Judge Moore, Jr., would have rendered to his mother before he reached the age of twenty-one years."

We submit that this instruction, as given by the court, is clearly erroneous, because it authorizes the infliction of double damages and this error was made manifest in the excessive verdict which was rendered for the death of this eight year old negro boy.

"Reasonable compensation for the life expectancy of Judge Moore, Jr.," means of course, the money value or earnings, of his entire life from eight years of age to the end. Assuming that he would have lived to the good old age of seventy years, this first element of damages included: 1. His prospective earnings from eight to twenty-one year; and 2, his prospective earnings from twenty-one to seventy.

The second element of damages in this instruction, "Reasonable compensation for the value of any service that Judge Moore, Jr., would have rendered to his mother before he reached the age of twenty-one years" was necessarily his prospective earnings from eight to twenty-one years. Compensation for his life expectancy up to twenty-one years, and compensation for his services to his mother up to twenty-one years are necessarily one and the same.

The mother was entitled, of course, to the services—all the services, and all the earnings of the child during minority. The child was entitled to his earnings after twenty-one years of age. His mother living, he had no monetary interest in his earning up to twenty-one years of age, that is to say during minority, and he could not recover for the value of his expectancy of life up to twenty-one years. For both to so recover would be double damages.

It cannot be that the mother could recover the value of the services, or life expectancy, of the boy up to twenty-one years, and that the boy might have also recovered an additional sum as the value of his life expectancy for the same period. The effect of such a finding would be to give to the mother, plaintiff, twice the value of the services of the child during minority; first, in her own right, and second, in the right of the child, double damages for the child's minority.

And we submit that our contention is true notwithstanding the case of *Cumberland Tel. Co.* v. *Anderson,* 89 Miss. 732. The instruction on the measure of damages under consideration in that case, which was a suit by a mother for the death of a minor son, authorized the jury to consider the following elements of damages: 1. Such damages as the boy sustained up to the time of his death, taking into consideration his injuries and his mental and physical suffering, such damages to be reasonable compensation to the boy for his injuries. 2. The pecuniary damages that the plaintiff may have sustained by the death of her son, taking into consideration the loss for the mother of the services of the boy until he would have arrived at the age of twenty-one years, and the loss of prospective gratuities from the boy to his mother after he became twenty-one years of age.

The last clause of the instruction was condemned under the facts of the case as manifest error, the court saying that not all possible gratuities can be recovered, but only such gratuities as there is reasonable expectation of receiving.

Having decided the question as involved, the court announces that in a suit by the mother for the death of a minor son brought under the Acts of 1898 these four elements of damage may be recovered: 1. The value of the services of the child from the time of death up to majority; plus. 2. Such damages as the jury may fairly award as compensation for the physical and mental anguish endured by the child killed, between the injury and death;

to which must also be added.  3. Such gratuities as the evidence may show the mother had a reasonable expectation of receiving before or after majority.  4. Whatever sum the son might have recovered as the present value of his own expectancy.

The enumeration of the four elements of damages that might be recovered under the statute for wrongful death of a child, was not involved in the Anderson case, and was not necessary to a decision thereof.

Refreshing our memory with regard to the case of *New Deemer Mfg. Co. v. Alexander*, 85 So. 104, we find that our argument on the instruction in question closely follows the opinion of this court in the Alexander case, and that this court has announced in the Alexander case that the enumeration in the Anderson case of the four elements of damages recoverable under the statute is nothing more than an expression of the views of the judge writing that opinion.

Under these facts, the foregoing instruction is also condemned by the case of *Railroad Company v. Crudup*, 63 Miss. 291; *Railroad Company v. White*, 82 Miss. 468, and *Oil Company v. Smith*, 95 Miss. 528.  The court erred in giving the first instruction asked by the plaintiff that Judge Moore, Jr., was incapable of contributory negligence.

The rule announced by this court is that a child of tender years (say seven to fourteen years of age), is *prima facie* incapable of exercising judgment and discretion, and hence incapable of contributory negligence, but that this is a presumption which may be rebutted by testimony showing that the particular child has sufficient intelligence and discretion to be responsible for his own negligence. *Mackie* v. *Vicksburg*, 64 Miss. 777; *Vicksburg* v. *McLain*, 67 Miss. 4; *Potera v. Brookhaven*, 95 Miss. 774.

It was shown by the testimony of Martha Moore, mother in this case, that the deceased boy was eight years old; that he was healthy and well grown for his age; that he had sufficient judgment and discretion to render good

services about the place, helping about the house and the cultivating of the garden; that he was in the habit of being sent to the store and of carrying dinner to his father; that in going to the store and in carrying dinner to his father, he was accustomed to crossing the railroad at the point where the accident occurred; that he frequently rode with his father in the automobile, often going to town with his father and to the shop, in all of which trips the automobile was driven across the railroad at the point of the accident; that the boy had been to school, and that while he could not drive an automobile, that he would help his father work about automobiles by handing him things, etc.

It thus appeared that the boy had sufficient judgment and discretion to be sent by his parents frequently across the railroad track, and considerable distances, on various errands and that he was familiar with the driving and use of automobiles and of the railroad crossing in question, and we submit that under this testimony the question as to whether or not he was capable of contributory negligence should have been submitted to the jury.

*Marion W. Reiley* and *Martin Miller,* for appellee.

Counsel for appellants, first complains that the court erred in giving a peremptory instruction to appellees as to liability. At the outset, plaintiff is met with the *Westbrook case,* 66 Miss. 560, 6 So. 321, which holds that even if the father was negligent in driving the car, that this negligence is not imputed to the child, and that appellants cannot escape if they were guilty of such negligence as proximately contributed to the injury of the child. And the case of *Mackie* v. *City of Vicksburg,* 64 Miss. 777; *Westbrook* v. *M. & O.,* 66 Miss. 560, 6 So. 321; *City of Vicksburg* v. *McLain,* 67 Miss. 4.

We wish the court to distinctly understand that it is our contention that the trial court was warranted in giving a peremptory instruction for the appellees, regardless

of whether or not the injury was inflicted within the corporate limits of the city of Meridian. *Hasie* v. *Alabama R. Co.,* 78 Miss. 413, 28 So. 941; *Illinois R. Co.* v. *Daniels,* 96 Miss. 314, 50 So. 721; *Alabama R. Co.* v. *Lowe,* 73 Miss. 203, 19 So. 96.

As held in these decisions, he was justified in presuming that the train would be running at a lawful rate of speed and was justified in acting upon that presumption. Had the train entered the city at the rate of six miles per hour, the accident would never have occurred because the automobile was struck near the center and it would have been beyond the track before the train reached the point upon the track where the automobile crossed it.

But even though Judge Moore, Sr., was himself guilty of contributory negligence, for two reasons, that would not let the appellants escape. First: Because the negligence of Judge Moore, Sr., is not imputed to the child. Second: Because the appellants were guilty of negligence which proximately contributed to the injury, and therefore, Judge Moore, Sr.'s negligence, even though his negligence was attributable to the child, would only serve to diminish the damages.

Speed of Train. All of the testimony except the testimony of O'Brian and Ellis and Danies, three of the employees of one of the appellants, shows that the train was travelling between twenty and forty miles per hour. We further submit that the *prima-facie* statutes of Mississippi applies in this case because when we prove that the child was killed by a running train, it then developed upon the railroad company to show that they did everything that the law required them to do to avoid the injury. Did they do this?

The proof shows that the child was injured by a running train and this proof placed the burden upon the railroad company to show that it was free from fault. Unless it met this burden, the appellees were entitled to a peremptory instruction. *Railroad Co.* v. *Cole,* 101 Miss. 173, 57 So. 556; *Jefferson* v. *R. R. Co.,* 105 Miss. 571, 62

So. 643; *R. R. Co.* v. *Thornhill,* 106 Miss. 387, 63 So. 674; *R. R. Co.,* v. *Gray,* 79 So. 812; *R. R. Co.,* v. *Roberson,* 106 Miss. 896, 64 So. 838; *R. R. Co.* v. *Boone,* 82 So. 335; *R. R. Co.* v. *Handy,* 108 Miss. 421, 66 So. 638.

It was the duty of appellants to run the train in a reasonably prudent manner, regardless of the statute governing the running of trains within the corporate limits of a city.' And in this case, the evidence showed that appellants, knowing of the great amount of travel on the 49th avenue crossing, drove the train at a dangerous rate of speed over this crossing, and after seeing the automobile approaching the track, made no effort to stop the train until it had hit the automobile, and therefore, they are liable, regardless of the statute. *R. R. Co.* v. *French,* 69 Miss. 121, 12 So. 338; *R. R. Co.* v. *Jobe,* 69 Miss. 452, 10 So. 672; *R. R. Co.* v. *Phillips,* 70 Miss. 14, 11 So. 602; *R. R. Co.* v. *Martin,* 23 So. 231; *R. R. Co.* v. *Lawler,* 65 So. 857.

Judge Moore, Sr., the driver of the automobile had a right to assume that the train would not enter the corporate limits of the city of Meridian at a speed greater than six miles per hour and he had a right to rely upon this presumption and act upon it. *Hosie* v. *R. R. Co.,* 78 Miss. 413, 28 So. 941; *R. R. Co.* v. *Daniels,* 96 Miss. 314, 50 So. 721; *R. R. Co.* v. *Lowe,* 73 Miss. 203, 19 So. 96.

Counsel in support of this contention cite the case of *Railroad Co.* v. *Cassidy,* 5 So. 380. This is a case where cattle were killed within the corporate limits of the town of Clarksdale, and in this case, the jury in substance were instructed that the mere fact that the train was running over six miles per hour within an incorporated town warranted a verdict for the plaintiff, leaving out of the instruction altogether whether the excessive speed caused the killing of the cattle.

In the case at bar, if the train had been traveling at a reasonable rate of speed, the automobile would have passed beyond the track and the child would never have been killed. The railroad company is entitled to a clear track

only when acting within their rights, but not when violating the law or when guilty of gross negligence. *Railroad Co. v. Lowe*, 73 Miss. 203, 19 So. 96.

Counsel also cite the case of *Miss. R. R. Co. v. Butler*, 93 Miss. 654. This is a case so very materially different in facts that it is not in point. In the Butler case, cattle were killed by a train leaving Kosciusko and some seventy-five yards or more from its corporate limits. The facts in the case at bar are very similar to the facts in the case of *R. R. Co. v. Pollock*, 62 N. E. 831; *Johnson v. Wabash R. R. Co.*, 259 Mo. 534, 168 S. W. 713.

The next error complained of is the giving of the following instruction as to the measure of damages: "The court instructs the jury for the plaintiffs; that if the jury find for the plaintiffs, they should find a lump sum which the jury may believe from the evidence will be a reasonable compensation for the life expectancy of Judge Moore, Jr., and in addition thereto, will be a reasonable compensation for the value of any services which the jury may believe from the evidence, if any, that Judge Moore, Jr., would have rendered to his mother before he reached the age of twenty-one years."

Appellants contending that this instruction is erroneous because it authorized the infliction of double damages in that it permitted the mother to recover for the services of Judge Moore, Jr., before he reached the age of twenty-one and that, "reasonable compensation for the life expectancy of Judge Moore, Jr.," in this instruction is also included the value of services to his mother before he reached his majority.

What is meant by "reasonable compensation for the life expectancy of Judge Moore, Jr.?" It means what would have been the value of his earnings to him had he lived out his expectancy; its value to his estate when he was killed. Judge Moore, Jr., was a minor. Reasonable compensation for the life expectancy of a minor is the value of his earnings from the time he reaches majority to the end of his expectancy, because before that time his earnings, his

services belong to someone else. He is under legal incapacities to earn any money or perform any services for himself and consequently for his estate, before his majority. *Ala. C. Coal & Coke Co.* v. *Pitts,* 98 Ala. 285, 13 So. 135; *Tutwiler Coal, Coke & Iron Co.* v. *Houston,* 129 Ala. 336, 30 So. 600; *Carney* v. *Concord St. Ry. Co.,* 72 N. H. 364, 57 Atl. 218; *New Deemer Mfg. Co.* v. *Alexander,* 85 So. 104.

Upon an analysis of the Alexander case, instead of condemning the instruction in the present case, it is one of the clearest authorities that we have been able to find that the instruction as given in this case is correct. Appellant evidently puts a different construction on the instruction he is now complaining of than the construction he put on it on the trial of the case below, because counsel asked and obtained the following instruction: "The court instructs you that the value of this boy's expectancy is the net value in money, after deducting the amount necessary for his support and maintenance; and that the value of his services during minority is the net value after his support and maintenance is taken out."

All instructions and the language used therein must be read in connection with all the other instructions of the case. *Hitt* v. *Terry,* 92 Miss. 671; *Cumberland Tel. & Tel. Co.* v. *Jackson,* 95 Miss. 79, 84 So. 614; *Miss. Central* v. *Lott,* 80 So. 277. When these two instructions as to the measure of damages are read together, the jury could not have been misled. *Public Iron & Steel Co.* v. *Howard,* (Ala.), 72 So. 263; *Gilley* v. *Denman,* (Ala.), 64 So. 97; *Y. & M. V.* v. *Messenia,* 67 So. 963; *R. R. Co.* v. *Moore,* 101 Miss. 768, 58 So. 471; 39 L. R. A. (N. S.) 978; Annotated cases 1914B. 597.

Counsel complains further that the instruction as to the measure of damages is erroneous for the reason that the condition of the health of the plaintiffs was not shown and cites in support of this contention the cases of *R. R. Co.* v. *Crudup,* 63 Miss. 291; *R. R. Co.* v. *White,* 82 Miss. 468; *Oil Co.* v. *Smith,* 95 Miss. 528.

Counsel is wrong in his contention that the record does not show the health of the parties. It shows that the health of the parties was good and these cases cited by counsel are not in point, because the undisputed proof in the record shows the mother's age and that she was in good health and also that the health of the deceased at the time of his death was good, and also his age.

These cases all announce the rule that mortuary tables are admissible in cases to show life expectancy only when the parties killed come within the class of risks, upon which the mortuary tables are based. In the case at bar no mortuary tables were offered. We especially call the court's attention to the case of *Railroad Co.* v. *White,* 82 Miss. 468, cited by appellant. In that case, the court said: "It would have been insufficient to show the ages of the plaintiff and the deceased, their condition of health and constitution and left the jury to say how long either of them was liable to live, but when one relies upon mortuary tables to show life expectancy, it then becomes necessary to show that the party belongs to that class."

This is just precisely what happened in the case at bar. The condition of the health of Judge Moore, Jr., and Martha Moore, his mother, was shown. No damages were asked for the other two parties.

Counsel next complains that the court erred in giving the instruction for appellees that Judge Moore, Jr., was incapable of contributory negligence. In discussing counsel's contention that the court erred in giving the peremptory instruction, we have already answered this contention, but would add—even if appellants had filed a plea that Judge Moore, Jr., was of sufficient intelligence and precocity to be held guilty of contributory negligence that there was no evidence to warrant any such contention, it not being enough to prove that the child was familiar with the premises, and ordinarily bright and industrious. *Potera* v. *City of Brookhaven,* 95 Miss. 774, 49 So. 617.

We do not deem it necessary to discuss this point further.

SYKES, J., delivered the opinion of the court.

This suit was brought in the circuit court by the appellee, Martha Moore, who sued for herself as mother and for two minor children of hers, as sisters, of Judge Moore, Jr., a negro boy eight years old, who was killed by a train of the New Orleans & North Eastern Railroad Company on Forty-Ninth avenue, a part of which avenue is within the corporate limits of the city of Meridian, and a part being without the corporate limits. The deceased was riding with his father in a Ford automobile, and while attempting to cross the railroad tracks the automobile was struck by a passenger train of the New Orleans & North Eastern Railroad Company, as it was coming into the city of Meridian, and the two occupants of the automobile were killed. The court peremptorily instructed the jury to return a verdict in favor of the plaintiffs. The jury was also instructed by the court that the deceased was incapable of being guilty of contributory negligence. At the instance of the plaintiffs the following instruction on the measure of damages was given.

"The court instructs the jury for the plaintiffs that if the jury find for the plaintiffs, they should find a lump sum which the jury may believe from the evidence will be a reasonable compensation for the life expectancy of Judge Moore, Jr., and in addition thereto will be a reasonable compensation for the value of any service which the jury may believe from the evidence, if any, that Judge Moore, Jr., would have rendered to his mother before he reached the age of twenty-one years."

The jury returned a verdict in favor of the plaintiffs for seven thousand five hundred dollars, upon which the circuit court entered judgment to conform with the verdict, and the defendant in the lower court prosecutes this appeal.

The three principal grounds upon which we are asked to reverse this judgment are:

First. That the court erred in instructing the jury peremptorily to return a verdict for the plaintiffs.

Second. That the court erred in deciding as a matter of law that the deceased was not guilty of contributory negligence.

Third. That instruction No. 3 on the measure of damages is erroneous.

The uncontradicted testimony in the case is to the effect: That the deceased, a negro boy eight years old, was riding in a Ford automobile with his father going home. That there is a store and perhaps other objects which obstructed the view of the driver of the automobile until he came upon the railroad right of way. This right of way is one hundred feet wide, and there are six railroad tracks crossing Forty-Ninth avenue at this place. The incoming train was on the fifth track from the side from which the automobile came. That the driver of the automobile had an unobstructed view of the track for about one thousand yards after he came upon the right of way. The automobile crossed the four intervening tracks before it was hit by the incoming train. The automobile did not stop or slacken its speed after entering upon the railroad right of way. The engineer and fireman on the train were both upon the lookout as the train approached the crossing. The automobile came from the left, or the fireman's, side of the train. The fireman testified, and his testimony is uncontradicted upon this point, that he first saw the automobile as it reached the second railroad track, whereupon he immediately notified the engineer, and the engineer applied the emergency brake and did everything he could to stop the train. At the time the fireman saw the automobile he thinks the engine was about fifty feet from the crossing, and the automobile was about the same distance from this track. The deceased sustained fatal injuries from which he died in a few hours without having regained consciousness. Forty-Ninth avenue is a frequently used street crossing. The corporate line of the city of Meridian runs about midway down this avenue. The

124 Miss.—33

train before reaching the avenue was outside of the cor-
porate limits. If the automobile was struck on the right
side of the avenue, the accident occurred without the city
limits. The testimony is conflicting in a great many ma-
terial respects.

The plaintiffs' testimony was to the effect that the prop-
er signals were not given for this crossing. The defend-
ant's testimony is that they were. The plaintiff's testi-
mony is that the train was running at a very high rate
of speed, some witnesses testifying to a speed of thirty
to thirty-five miles an hour, the defendant's testimony is
to the effect that the train was running from ten to fif-
teen miles an hour. The testimony is conflicting as to the
speed of the automobile; the plaintiffs' witnesses putting
this speed as low as five or six miles an hour, while the
defendant's witnesses estimate it at ten or fifteen. The
testimony is conflicting as to the number of feet run by
the train after striking the automobile. The plaintiffs'
witnesses testify that the train was seven hundred or eight
hundred feet, and the defendant's witnesses testify that it
ran three hundred twenty feet. The plaintiffs' witnesses
testify that the automobile was struck within the corpo-
rate limits of the city of Meridian, while at least one wit-
ness for the defendant testified that the accident occurred
outside of the corporate limits. There are contradictions
in the record also as to the number of feet in which this
train could have been stopped running at various rates
of speed. The engineer testified that he was on the look-
out, but his view of the left-hand side of the crossing was
obstructed by the boiler of the engine; consequently that
he was unable to see the automobile, and was not aware
of its approach until notified by the fireman. The auto-
mobile had traveled in the neighborhood of fifteen or
twenty feet upon the right of way before it was seen by
the fireman. If the speed of the automobile was ten or
fifteen miles an hour, as testified to by the defendant's
witness, it was seen by the fireman a very few seconds
after it came within his vision.

1.  In considering the propriety of the peremptory instruction given in favor of the plaintiffs we must view the testimony in the case most strongly in favor of the defendant, and all conflicts in the testimony must be resolved in defendant's favor.  And the defendant must be given the benefit of all reasonable inferences to be deduced from this testimony.  Applying this rule, we have this passenger train approaching the corporate limits of the city of Meridian traveling at a rate of speed of from ten to fifteen miles an hour.  It had given all the statutory requirements relating to crossing signals, having blown for Arundel street crossing, for Forty-Ninth avenue crossing, having given the station signal whistle, and also a whistle switch signal; also that the bell was being continuously rung.  The engineer and fireman were both on the lookout, and the approaching automobile was discovered by the fireman certainly within a few seconds after it came within the range of his vision.  The automobile was traveling at a rate of speed of ten or fifteen miles an hour, and as soon as seen by the fireman he appreciated the gravity of the situation, and at once notified the engineer, and the engineer immediately did everything in his power to stop the train and prevent the injury.  This, however, was impossible.

Under this testimony the automobile was struck outside of the corporate limits of the city of Meredian.  It was not negligence *per se* to approach the corporate limits at a rate of speed of fifteen miles an hour.  Section 4043, Code of 1906 (section 6667, Hemingway's Code), which makes a railroad company liable for damages or injury sustained by any one from locomotives or cars while they are running at a greater rate of speed than six miles per hour through a town or village, only applies to accidents which occur within the corporate limits of the city, and the fact that the speed at which a train was running outside of the corporate limits of a municipality shows that this speed could not have been reduced to six miles an hour when the train entered the municipality would not

constitute as a matter of law a negligent rate of speed. The six miles an hour statute can only be invoked when the accident occurs within the limits of the municipality. *Railroad Co.* v. *Butler,* 93 Miss. 654, 46 So. 558.

It was the duty of the engineer and fireman to use reasonable care and diligence in maintaining a lookout for people using Forty-Ninth avenue crossing, and whether or not they exercised this care and diligence under the circumstances, and whether the fireman discovered the approaching automobile and appreciated the impending danger as soon as he should have done so by the exercise of reasonable care and diligence, and exercised this diligence in notifying the engineer, were all questions of fact to be decided by the jury, and not of law for the court. If the jury believed that the servants of the railroad company were negligent either in running the train at an excessive rate of speed or in failing to maintain a proper lookout, or both, the further question was for them to decide whether or not this negligence was the proximate or one of the contributing causes of the accident. *Railroad Co.* v. *Williams,* 114 Miss. 236, 74 So. 835; *Railroad Co.* v. *McGee,* 117 Miss. 370, 78 So. 296; *Railroad Co.* v. *Dillon et al.,* 111 Miss. 520, 71 So. 809; *Power Co.* v. *McEachern,* 109 Miss. 380, 69 So. 185. We, therefore, conclude that the court erred in instructing the jury peremptorily to return a verdict in favor of the plaintiffs.

2. The testimony of the mother was to the effect that this child rendered the ordinary services to its parents that a child of eight years old does. There was no testimony that the child was especially precocious for its age. A child of this age is *prima-facie* incapable of exercising judgment and discretion. This presumption, however, may be rebutted by testimony. The testimony in this case as a matter of law is insufficient to rebut the presumption, and the court was correct in instructing the jury that the deceased was not guilty of contributory negligence. *Westbrook* v. *Railroad Co.,* 66 Miss. 560, 6 So. 321, 14 Am. St. Rep. 587; *City of Vicksburg* v. *McLain,* 67 Miss. 4, 6

So. 774; *Potera* v. *City of Brookhaven*, 95 Miss. 774, 49 So. 617.

3. The third instruction given the plaintiffs is inaccurately drawn. The expectancy of life is calculated from the time of the death of the deceased, and not from the time when he would have become of age. 8 A. & E. Ency. of Law, 949. By the first part of this instruction the jury are instructed to return a lump sum for this life expectancy. Broadly speaking, this would cover the years of his minority. Parents are entitled to the services of their children during minority, and in this case the mother would be entitled to recover reasonable compensation for the value of the deceased's services during minority. This minority service was really covered by the first part of the instruction. The second part expressly authorizes a recovery for this in addition to the entire life expectancy. *New Deemer Mfg. Co.* v. *Alexander*, 85 So. 104.

*Reversed and remanded.*