588

ILLINOIS CENTRAL R. R. CO. *v.* BRASHIER.

No. 39673         · June 13, 1955         80 Co. 2d 739

*Laub, Adams, Forman & Truly,* Natchez, for appellant. ·

*Wm. F. Riley,* Natchez; *Satterfield, Shell, Williams & Buford,* Jackson, for appellee.

ARRINGTON, J.

The appellee, Mrs. Gurchia Mildred Brashier, brought this suit against appellant, Illinois Central Railroad Company and E. E. Emerick, its engineer, in the Circuit Court of Adams County, Mississippi, to recover damages for personal injuries received when the automobile in which she was riding was struck by the engine of the appellant railroad company. There was a verdict and judgment in the sum of $8,500 against the railroad company, from which it appeals.

The declaration alleges that the appellant maintains a track which runs down the middle of Monroe Street in the City of Natchez; that the street, which runs in an easterly and westerly direction, is narrow and closely built up with houses on both sides of the street, and especially on the south side; that there are no sidewalks on said street but the street is used for two-way traffic; that on May 15, 1953, at approximately 6:45 P. M., appellee and her son were riding with her husband, traveling south on Pine Street, which intersected Monroe Street, and as they turned to the right, traveling in a westerly direction, a train of the appellant railroad company was approaching from the east; that cars were parked on the north side of Monroe Street which prevented Mr. Brashier from turning to his right out of the path of the train, and that the train was being operated in a negligent manner and at an excessive rate of speed; that the driver of the car tried to get out of the way of the train but due to the narrowness of the street, an oncoming vehicle traveling east on the south side of Monroe Street, and cars parked on the north side of the street, he was unable to do so; that he drove the car north to the curb and parked and then flagged and shouted at the engineer to stop the train; that in parking the car, the left rear end of the car was on or near the track and the engine of the train struck the automobile, damaging the automobile and seriously injuring the appellee. The declaration charged and appellee's proof was to the effect

that although it was dusk dark, the headlight was not burning, it gave no warning of its approach, the bell was not ringing and the whistle was not blowing and none of the occupants of the car had notice of the approach of the train at the time they entered Monroe Street from Pine Street, as their vision of the train was obstructed by a dwelling situated at the northwest corner of the intersection of Monroe and Pine Street; and that when the automobile entered Monroe Street all of the occupants saw the train, but Mr. Brashier was unable to get out of the train's path to avoid the collision, as he could not back up into Pine Street due to the traffic thereon.

Seven witnesses testified on behalf of the plaintiff that the headlight of the engine was not on; that no warning signals were given of its approach and that it was running at an excessive and fast rate of speed, estimated by some of the witnesses to be as fast as twenty miles per hour.

The appellant's train consisted of a steam engine and caboose and the crew was composed of six men. They testified that the headlight was on and that the bell was continually ringing and that the speed was three or four, not over five, miles per hour. At the time of the collision, Mr. Emerick, the engineer in charge of the engine, was on the fireman's side, or left side, of the engine and the engine was being operated by a Mr. Murray, who was also a engineer but who was acting as fireman at that time. Mr. Emerick testified that they were going to the round house about three blocks east of Pine Street; that he was keeping a lookout and did not see or hear anything; that he had no recollection of the collision and did not know about it until the next day. The appellant's witnesses also testified that the traffic on Monroe Street was heavy and that all of the crossings were dangerous; that sometimes the streets became congested and blocked because of cars parked thereon. Mr. Murray, who was operating the engine at the time, was on the right

hand side in the engineer's seat, on the south side of the engine. He testified that his vision was obscured by the boiler of the locomotive and that he did not see the accident.

According to the appellee's testimony, the train did not stop but continued on its way. A policeman was called to the scene of the accident by Mr. Brashier, the driver of the car, and according to his testimony, he arrived there about 7:05 P. M. He also testified as to the damage to the car.

An ordinance of the City of Natchez regulating the manner in which trains shall be operated was introduced in evidence, and reads in part as follows:

"That, except hereinafter provided, no railroad locomotive, car or train of cars shall be run through, over or across the public avenue and streets, roads or other public ways in the City of Natchez at a greater rate of speed than six (6) miles per hour that the bell of such locomotives shall be rung continuously while said locomotive is proceeding through or across any of said streets and avenues, roads or public ways. That whenever any such locomotive or any car or train of cars propelled by any such locomotive is nearly approaching the crossing of any of the following streets, avenues, roads or public ways of the City of Natchez, to-wit: Brenham Avenue, Devereaux Street, Pine Street, North Rankin Street, North Union Street, Commerce Street, North Pearl Street, South Pearl Street, Briel Avenue, Canal Street, Wall Street, or Liberty Road, the same shall be proceeded by a flagman at a distance of not less than 40 feet, nor more than 50 feet in front of the advancing locomotive, car or train of cars who shall continuously wave, during the day time, a flag easy to be seen, and during the night time a lighted lantern easy to be seen, from the time he shall have reached the crossing until he shall have traversed it. That there shall be kept and maintained on the advancing railroad locomotive, car or train of cars while running through, over or across any of the

streets, avenues, roads or other public ways of the city during the night time a brilliant and conspicuous light   . . ."

There was also introduced in evidence a plat of Monroe Street, including the intersection at Pine Street, and two photographs — one of Monroe Street and one showing the intersection at Pine Street. These photographs show the railroad truck and the houses on the north and south side of said track and also the large house north of the intersection of Pine and Monroe which obstructs the view of an approaching train from the east to persons traveling south on Pine Street.

The appellant assigns as error, first, that the injuries to appellee were caused solely by the negligence of her husband, the driver of the automobile in which she was riding. Appellant contends that under the facts and circumstances of this case, that it was immaterial as to whether the headlight was on, the bell ringing, or the whistle blowing, for the reason that the appellee and the driver of the car saw the approaching train and that there was no need for the signals as was held in the case of Billingsley v. Illinois Central R. R. Co., 100 Miss. 612, 56 So. 790; Thompson v. Miss. Central Railroad Co., 175 Miss. 547, 166 So. 353, and other cases to the same effect.

We do not think these cases are applicable to the facts in this case. The evidence shows without dispute that the driver of the car, the appellee, and their son, had no warning of the train as they all testified that when the car turned into Monroe Street they saw the train but the driver was unable to back out into Pine Street due to the traffic. Therefore, the driver of the automobile, was confronted with the situation of parked cars and traffic on Monroe Street preventing him from getting clear of the track and he did all that was within his power to extricate his family from the perilous condition in which they were placed.

By rendering a verdict for appellee, the jury necessarily accepted appellee's evidence and we are un-

able to say that the numerous acts of negligence charged to appellant and amply supported by the evidence had nothing whatsoever to do with the collision as appellant contends. On the contrary, the record clearly shows that if warning signals had been given or a headlight had been burning, Mr. Brashier would have been warned of the approach of the train in time to avoid turning into Monroe Street, where once there, he could not escape from the path of the train under the circumstances of this case. Also, the proof adduced by appellee shows that the appellant was guilty of gross negligence in failing to stop its train once it became apparent that the automobile in which appellee was a passenger was in the path of the train and could not escape, though appellant's own proof is to the effect that the train could have been stopped in time to avoid the collision if a proper lookout had been kept. The engineer in the fireman's seat either saw the automobile in the path of the train and made no effort whatsoever to stop, or completely failed to see that which he should have seen, as it is undisputed that Mr. Brashier's automobile was in the path of the train, and that his automobile was struck by the train under the facts as hereinbefore related.

Numerous decisions of this Court hold that a railroad has the duty where its tracks cross a public highway to exercise caution commensurate with the situation to avoid collisions with travelers on the highway, by some sufficient means of warning travelers of the presence of the train on its tracks. Donald v. Gulf, Mobile & Ohio Railroad Co., 71 So. 2d 776; New Orleans & N. E. R. Co. v. Lewis, 214 Miss. 163, 58 So. 2d 486; Gulf, Mobile and Ohio Railroad Co. v. Scott, 216 Miss. 532, 62 So. 2d 878; Illinois Central Railroad Co. v. Williams, 144 Miss. 804, 110 So. 510.

In the case of Hinds, et al. v. Moore, et al., 124 Miss. 500, 87 So. 1, the Court said: "It was the duty of the engineer and fireman to use reasonable care and diligence in maintaining a lookout for people using Forty-Ninth

Avenue crossing, and whether or not they exercised this care and diligence under the circumstances, and whether the fireman discovered the approaching automobile and appreciated the impending danger as soon as he should have done so by the exercise of reasonable care and diligence, and exercised this diligence in notifying the engineer, were all questions of fact to be decided by the jury, and not of law for the court. If the jury believed that the servants of the railroad company were negligent either in running the train at an excessive rate of speed or in failing to maintain a proper lookout, or both, the further question was for them to decide whether or not this negligence was the proximate or one of the contributing causes of the accident. Railroad Co. v. Williams, 114 Miss. 236, 74 So. 835; Railroad Co. v. McGee, 117 Miss. 370, 78 So. 296; Railroad Co. v. Dillon, et al., 111 Miss. 520, 71 So. 809; Power Co. v. McEachern, 109 Miss. 380, 69 So. 185. We, therefore, conclude that the court erred in instructing the jury peremptorily to return a verdict in favor of the plaintiffs." See also L. & N. R. Co. v. Crominarity, 86 So. 464, 38 So. 633.

■■ ■ True, in the instant case, a crossing is not involved, but a situation where the track of the appellant runs through the middle of a public street. In our opinion this creates a dangerous condition and a much greater opportunity to collide with and injure the traveling public is presented. Consequently, a greater duty is placed upon the railroad to ward against such collisions. No Mississippi decision involving a similar factual situation has been called to our attention. However, apart from any implication that might be drawn from decisions involving crossings, it is generally held that a railroad track running down the middle of a public street is as great a hazard to the traveling public as an ordinary grade crossing. In 44 Am. Jur., Railroads, Sec. 451, p. 679, we find the following:

"Where railroad tracks are laid longitudinally along a public street, the situation is very different in so far

as the right of the public to use the portion of the street upon which the tracks are laid is concerned, from that which obtains where the railroad company is operating its trains upon an exclusive right of way. It is the duty of railroad companies thus operating along a public street to exercise a degree of care corresponding to the danger of such operation, and neglect of any precautions proper in the peculiar circumstances of the locality constitutes negligence. Since the public has the right to the use of the entire street, a person on the railroad tracks in the street is not a trespasser and the railroad company cannot, on the theory that he is, escape liability to one injured by the operation of trains over such tracks. While some courts have held that it is the duty of a railroad company operating in a public street to use the utmost or extraordinary care, the general and better rule is that of ordinary care under the circumstances. The fact that the tracks are in a street requires greater precautions, perhaps, than at other places, since the presence of persons on the street must be anticipated at all times, day or night, but the degree of care required is not greater than the usual requirement of ordinary care. The precautions that must be taken vary, of course, in degree, depending on the conditions and circumstances surrounding the use of the street both by the railway and the public . . ."

The Supreme Court of Florida, in dealing with a similarly situated track in an early decision, ably expressed the duty of the railroad in Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, 25 So. 338, 344, as follows:

" 'Where steam railroads are laid and operated along or across the streets of populous towns or communities where numerous people of all conditions and descriptions are aggregated, or likely to be, it is their duty to operate the dangerous implements used by them with the utmost degree of care strictly commensurate with the circumstances by which they are there surrounded, in order to avoid injury to others.' We do not appreciate the force

of appellant's contention that it is exempt from the principles of law embraced in these instructions because its road was in operation before the village came into existence. Its duty in respect to operating its trains is necessarily dictated and measured by the exigencies of the occasion, or in the light of the condition of things at the place where, and time when, the accident happened. Bucki v. Cone, 25 Fla. 1, 6 South. 160; Railroad Co. v. Williams, 37 Fla. 406, 20 South, 558. The building up of a town along and on its line, causing the operation of its road to be attended with greater danger to others, imposed a duty upon appellant to exercise such additional care as the circumstances reasonably demanded.''

In the instant case, the appellant operated its train down the middle of a street in a heavily traveled and congested area in the City of Natchez. The appellee adduced ample evidence to the effect that the appellant operated its train in such a manner as to evince a total disregard for the rights of others using said street.

▮▮ Appellant next argues that the court erred in instructing the jury that the appellee, as a matter of law, was not guilty of negligence. This was not error under the circumstances and facts of this case, as the driver of the car was placed in a perilous condition from which he was trying to extricate himself and had only seconds to get out of the way of the approaching train, which did not stop. Nothing that the appellee could have said or done would have improved the situation once Mr. Brashier turned the vehicle into Monroe Street. In the case of Columbus & Greenville Ry. Co. v. Lee, 149 Miss. 543, 115 So. 782, the Court said:

"The court below did not err in charging the jury that the negligence of the driver of the automobile could not be imputed to the appellee's intestate, nor in refusing to charge the jury that it was the duty of the appellee's intestate to stop, look, and listen before going on the railroad track. A guest in, or an occupant of, a vehicle being driven by another over whom he has no control,

is not chargeable with the negligence of the driver of the vehicle (Railroad Co. v. Davis, 69 Miss. 444, 13 So. 693; Hines v. McCullers, 121 Miss. 666, 83 So. 734; Coccora v. Vicksburg Light & Traction Co., 126 Miss. 713, 89 So. 257; Y. & M. V. R. R. Co. v. Lucken, 137 Miss. 572, 102 So. 393) but only with his own negligence in not remonstrating with the driver against the doing of a negligent act when the danger therefrom is, or should be, apparent to him (Railroad Co. v. McLeod, 78 Miss. 334, 29 So. 76, 52 L. R. A. 954, 84 Am. St. Rep. 630; Railroad Co. v. Lucken, supra).''

After appellee's husband turned into Monroe Street remonstrations would have served no purpose, for all of the occupants of the Brashier vehicle were then in a dangerous situation from which, as it developed, it was beyond their power to extricate themselves. After the vehicle in which appellee was riding entered Monroe Street under the conditions then prevailing, the only way in which a collision could have been avoided would have been for the train to stop, which it did not do. Appellee was guilty of no negligence and the lower court properly so charged.

The appellant further contends that the amount of the verdict was excessive. The evidence in this case shows that the appellee, when the car was struck by the engine, was thrown against the door and to the floorboard of the car, from which she received injuries to her neck and shoulders; that she went to Dr. Logan on the next morning after the accident, and he testified that she had a contusion of the right shoulder, which was severely swollen and blue, and it was necessary for him to give her sedation to alleviate the pain. She was instructed by Dr. Logan to come back for X-rays, but she did not return and he did not see her on any other occasion. Dr. McAmis testified that he was called to her home on the night of June 26, following the accident, and that he had been treating her continually since that time. He sent her to the Natchez General Hospital for

treatment and she remained there for a week. He testified that she was suffering from an injury to her neck and a bruise and contusion of the right elbow; that he had X-rays made and they revealed that she was also suffering from a calcium deposit in the shoulder and that she would continue to suffer so long as the calcium deposit remained. These X-ray pictures were introduced in evidence and were before the jury. Dr. McAmis further testified that the injury to the neck was a whiplash type of injury, where the head is either thrown forward, then backward, or backward then forward, usually tearing the ligaments supporting the spine, and that she would continue to suffer over a period of time. Appellee worked prior to the collision, but the injuries received therein ultimately prevented her from continuing her employment. Considering the continuing nature of the injuries received by appellee, her medical expenses, the pain and suffering involved and her loss of earnings, we are of the opinion that the verdict was not excessive.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.